CITY OF MELBOURNE *v.* BILLINGSLEY.

4-8154 198 S. W. 2d 840

Opinion delivered January 13, 1947.

*Northcutt & Northcutt,* for appellant.

*W. E. Billingsley,* for appellee.

GRIFFIN SMITH, Chief Justice. It is conceded that if Melbourne is a City of the Second Class, its unanimous vote of October 8, 1946, in favor of issuing waterworks improvement bonds under authority of Amendment No. 13 to the Constitution is valid. The question is, Was Melbourne a City of the Second Class, or an Incorporated Town?[1]

The municipality's demurrer makes these admissions: Melbourne was an Incorporated Town until March 1937. Under Ordinance No. 9 a proposal for classification as a City of the Second Class was submitted to the voters. By a majority of more than eight to one the higher status was approved at an election April 9, 1937. The County Board of Election Commissioners immediately certified the returns. The March ordinance provided the City should embrace all area formerly included in the Incorporated Town—that is, one ward. Section 4 directed that an election be held the first Tuesday in April 1938, and biennially thereafter, for selection of a Mayor, Recorder, Treasurer, Marshal, and five Aldermen, to hold office for a period of two years. Representation on the City Council (Section 2) was, until the 1938 election, to be "as now provided for by law".

Section 9801, Pope's Digest, is applicable to Cities of the Second Class. It authorizes election of two Aldermen from each ward. By Act 153 of 1923 (Pope's Digest, Sec. 9752) authority is given Cities of the Second Class

---

[1] W. E. Billingsley, a citizen and taxpayer of Melbourne, acting for himself and all others similarly situated, sought to enjoin issuance of $15,000 in bonds. The defendant, (City) through its officers, declined to plead further when its demurrer was overruled. The cause was brought here by appeal.

and Incorporated Towns to elect a City Attorney. Section 9793 of the Digest (Act 259 of 1937) invests administration of Incorporated Towns in a Mayor, Recorder, and five Aldermen. In *Harrison* v. *Campbell*, 160 Ark. 88, 254 S. W. 438, it was held that the Mayor and Recorder are members of the Council and entitled to vote in respect of Ordinances and other matters.

Act 334 of 1937, approved March 25—eight days after Act 259 was signed by the Governor—gives to any Incorporated Town *"which is a county seat"* the right to become a City of the Second Class. See *Lewis* v. *Tate*, *ante*, p. 326, 195 S. W. 2d 640.

Melbourne, a county seat, had the right under Act 334 to become a City of the Second Class. But Act 334 was not emergency legislation, hence it did not become a law until ninety days after adjournment of the General Assembly. In the meantime (March) an Ordinance submitting the proposal to the voters was passed by the Council; and the April election occurred before ninety days had elapsed after adjournment of the Legislature. Since, under Amendment No. 13, only Cities of the First and Second Class may issue bonds secured by a pledge of taxes, it is necessary to determine Melbourne's classification.

In *Lewis-Tate* an election was called under authority of act 211 of 1939,[2] the purpose being to "upgrade" Mulberry to a City of the Second Class. Before a Council could be chosen the succeeding April, municipal authorities of the Incorporated Town called an election, and in a January proceeding there was submitted to voters the question whether bonds should be issued for sewers, payable from a millage tax. We held that while the *de facto* status existed—that is, during the period between favorable action by the State Board of Municipal Corporations and a legal election—officials could only perform acts within the powers of an Incorporated Town.

---

[2] The Lewis-Tate appeal involved issuance of bonds by Mulberry under Amendment No. 13. Act 211 of 1939 amends Act 334 of 1937 by eliminating the prerequisite that an Incorporated Town must be a county seat in order to qualify as a City of the Second Class.

Different expressions are used in the opinions regarding Acts as to which there was failure to adopt the emergency clause; but all are to the same effect. The following serve to emphasize our holdings:

*Foster* v. *Graves,* 168 Ark. 1033, 275 S. W. 653: "The statute . . . did not go into effect until January 10, 1924, by reason of the fact that there was no separate roll call [on the emergency clause"].

*Crowe* v. *Security Mortgage Co.,* 176 Ark. 1130, 5 S. W. 2d 346: " . . . as Act 346 . . . did not contain the emergency clause, it was not a law for any purpose until ninety days after the adjournment of the session of the Legislature at which it was passed". (See earlier cases cited in this opinion).

*School District No.* 41 *et al* v. *Board of Education,* 177 Ark. 982, 8 S. W. 2d 501: "The Act was approved on the 16th day of March, 1927, but contained no emergency clause, and did not go into effect until ninety days after the adjournment of the Legislature".

*DuLaney* v. *Continental Life Insurance Co.,* 185 Ark. 517, 47 S. W. 2d 1082: "Act No. 235 was approved by the Governor March 27, 1931, and, as its emergency clause was insufficient to put it into effect upon its approval by the Governor, it is conceded that it did not take effect as a law until ninety days after the adjournment of the legislative session".

*Lacefield* v. *Taylor,* 185 Ark. 648, 48 S. W. 2d 832: "The Act was approved March 27, 1931, and as it contained no emergency clause, it did not become a law until ninety days after the adjournment of the session".

*Gentry* v. *Harrison,* 194 Ark. 916, 110 S. W. 2d 497: "Our conclusion is that the law is valid, but [for want of an appropriate emergency clause] it did not take effect until 90 days after the adjournment of the General Assembly".

*Steele* v. *Gann,* 197 Ark. 480, 123 S. W. 2d 520, 120 A. L. R. 754: "The General Assembly of 1935, after the

passage of [Act 135], adjourned March 14, . . . and therefore the Act [which did not carry the emergency clause] did not become effective until 90 days. . . . This provision of our Constitution providing that Acts without the emergency clause take effect 90 days after the adjournment of the Legislature gives parties 90 days and has the same effect that an Act would if passed and it were expressly stated in the Act that in causes of action that had already accrued parties should have 90 days after the adjournment of the Legislature in which to bring suit.''

Since Act 334 of 1937 was the only statute authorizing an Incorporated Town to be raised to a City of the Second Class by the process adopted, and the election was held in April; since the General Assembly of that year adjourned March 11, and Act 334 did not become a law for ninety days, there was no law under which the town could act until expiration of the ninety-day period.

Affirmed.