TERRY DAIRY PRODUCTS COMPANY *v.* BEARD, CITY COLLECTOR.

4-8682                                      216 S. W. 2d 860

Opinion delivered January 17, 1949.

*House, Moses & Holmes,* for appellant.

*T. J. Gentry* and *Frank H. Cox,* for appellee.

HOLT, J. Appellants, thirteen in number, milk distributors in the City of Little Rock, instituted the present suit to enjoin the City from enforcing Ordinance No. 7359 [passed July 21, 1947], on the ground that it was void for certain alleged reasons, which we shall presently consider. The relief prayed was denied and this appeal followed.

The purpose of the ordinance, as stated in the title, was "to provide for inspection fees of privately kept cows and goats, retail and wholesale raw dairies and milk plants," serving Little Rock.

Section 2 levied a premises inspection fee of $2.50 per year on all persons keeping cows or goats in the city or operating goat dairies to serve the city.

Section 3 provided: "Every person operating a retail raw milk dairy under the jurisdiction of the City of Little Rock shall pay to the City Collector of the City of Little Rock an inspection fee equivalent to the sum of Seventy-five Cents (75¢) per head of all adult cattle in

the herd at the time the permit is issued, . . . in no instance shall the amount paid be less than Ten Dollars ($10) per annum.''

Section 4 provided: ''Every person or firm or corporation selling milk to or producing milk for pasteurizing, homogenizing, bottling, or other plants where milk is prepared for sale to the consumer within the City of Little Rock shall pay an inspection fee to the City of Little Rock in the sum of Two-thirds Cents ($\frac{2}{3}$¢) for each 100 pounds of milk sold or produced by such person, firm or corporation to or for such pasteurizing, homogenizing, bottling or other plants. Such plants purchasing or receiving milk shall collect from the seller or the producer of the milk the above stated inspection fee of Two-thirds Cents for each 100 pounds of milk from the person, firm, or corporation selling or producing the milk to or for such pasteurizing, homogenizing, bottling or other plants. The purchaser shall keep an accurate record of same and remit such money or moneys to the City Collector of the City of Little Rock . . . In no event shall the amount paid by any producer be less than Five Dollars ($5) per year.'' The person or firms referred to in this section will be referred to as ''producers.''

Section 5 provided: ''Every person, firm or corporation operating a milk plant or place where milk or milk products are pasteurized, homogenized, mixed, condensed, or bottled, or otherwise prepared for sale to the consumer shall pay to the City Collector each month on or before the 10th day of each month for the preceding calendar month an inspection fee of One and One-third Cents ($1\frac{1}{3}$¢) on each one hundred (100) pounds of milk and/or milk products received and/or distributed, or sold or otherwise disposed of, etc.'' All of appellants fall within the class mentioned in this section and will be referred to as ''distributors.''

In § 7, it is provided: ''All fees herein provided for shall be paid to the City Collector and shall be used only for the expense of carrying out the provisions of this ordinance and other ordinances pertaining to milk inspection and control. The fees provided in §§ 4 and 5 shall

be based on the actual net weight of all the milk and milk products received.''

The minimum annual inspection fees required by the ordinance were: $10 for raw milk dairies; $5 for producers and $100 for distributors.

Appellants argue that the ordinance is invalid on the following grounds: ''1. (a) The aggregate of inspection fees levied on all of the distributors will exceed the cost to the city of inspecting all of the distributors. (b) The inspection fee to be paid by some of the individual distributors will exceed the cost of inspecting them, and therefore be a revenue measure as to them.

''2. The fees levied against appellants, when compared with the fees levied against the producers and raw milk dairies, are arbitrary, unreasonable and discriminatory.

''3. The city has no power to require the appellants to act as collecting agents of the fees of the producers,'' and such requirement, to the extent of the cost of such collection, would constitute a taking of property without due process of law.

We proceed to consider these contentions.

## 1 (a)

The Health Department of the City of Little Rock is divided into a number of divisions, one being the milk and dairy division, and the activities of this division are under the direct supervision of a City Health Officer.

It is the duty of the City Health Officer, in the operation of this division to see that the milk and milk products provided the people of Little Rock are pure, wholesome and uncontaminated, and to protect the health of the general public. The importance of the duties assigned to this division is obvious.

To assist this officer, in carrying out the duties required in the milk and dairy division, are five other employees who are paid by the City of Little Rock and upon

whom rests the burden of testing and inspecting the milk and milk products which reach the people of Little Rock. The preponderance of the testimony shows that to perform the services in operating the milk and dairy division required under the ordinance, *supra,* would cost the City of Little Rock approximately $14,500 per year and that the City would receive $9,417 from the distributors and producers combined as inspection fees under this ordinance to aid in the payment of expenses for the milk and dairy division. It thus appears that the City is actually spending more than $5,000 per year on the milk and dairy division over and above the amount collected from the producers and distributors. In other words, the City collects from these producers and distributors less in inspection fees than it costs the City for the services rendered.

The evidence further shows that the producers here sell their milk wholesale to the distributors here in Little Rock. The distributors in turn pasteurize it and sell and distribute it to the public or consumer. This milk while held by the producer and before passing into the hands of the distributor is given only one test by the City, that is the bacteria count, but after the distributors acquire it, five separate and distinct tests are given, that is bacteria count, specific gravity, butterfat, phosphates and fermentation.

Approximately 65 per cent. of the time of the City's technician and 60 per cent. of the City's inspectors is consumed in making these tests of the distributors' milk. Approximately 60 per cent. of the milk and dairy division expense, or $8,705.40, is incurred on behalf of the distributors exclusively. The total amount the distributors will pay for this service is $6,278, which is less than the actual cost of the inspection service to the city, so that appellants' contention that the aggregate of fees collected from the distributors is excessive and amounted to a revenue measure, in the circumstances here, is without merit.

This court, in the case of *City of Texarkana* v. *Hudgins Produce Company,* 112 Ark. 17, 164 S. W. 736, 51 L. R. A., N. S. 1035, said: "A fee sufficient to cover the

expenses of issuing the license, and to pay the expenses which may be incurred in the enforcement of such police inspection or superintendence as may be lawfully exercised over the business, may be required. It is obvious that the actual amount necessary to meet such expenses cannot in all cases be ascertained in advance, and that it would be futile to require anything of the kind. The result is, if the fee is not plainly unreasonable, the courts ought not to interfere with the discretion of the council in fixing it; and unless the contrary appears on the face of the ordinance requiring it, or is established by proper evidence, they should presume it reasonable.''

We said in *Coleman* v. *Little Rock,* 191 Ark. 844, 88 S. W. 2d 58: ''The argument that the fees are excessive and that the ordinances were passed not for the purpose of regulation but as revenue measures may be answered by saying that the undisputed testimony shows that the duties imposed by the ordinances are discharged at a cost in excess of the revenues produced.''

## 1 (b)

Appellants' contention that the inspection fee paid by some of the distributors will exceed the cost of inspection and therefore amount to a revenue measure is untenable for the reason that the City is not required to ascertain the exact cost of the service rendered on each distributor and assess an inspection fee accordingly. Obviously, such a requirement would be impracticable, if not impossible.

The inspection fee required by the ordinance is based upon the total poundage of milk processed by all the distributors, which the evidence shows will amount to about 129,000 pounds daily, or (excluding Sundays) a total of 40,377,000 pounds a year. It is shown that one of the distributors, Terry Dairy Company, handled more than 19,000,000 pounds of the above total in one year, or approximately 48 per cent. of the yearly total, and pays under the ordinance 18 per cent. of the cost of the inspection. We see no unfairness or discrimination in the classification which requires the distributor, as here, to pay on the basis of the poundage of milk distributed.

In *Gibbs et al.* v. *Milk Control Board of Georgia*, 185 Ga. 844, 16 S. E. 791, a case wherein a classification similar to the one presented here was attacked, the Georgia Supreme Court said: "The equal-protection clause of the 14th Amendment does not take from the states the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. A classification having some reasonable basis does not offend against the clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality," and in the case of *City of Newport* v. *Hiland Dairy Company*, 291 Ky. 561, 164 S. W. 2d 818, the City of Newport had passed an ordinance levying an inspection fee upon milk distributors of 4c per 100 lbs. upon all milk received by them and no fee was exacted of the producers, but it was provided that the fees collected from the distributors should be used to defray the expenses of inspecting the milk and premises of the producers. The principles of law announced in that case apply with equal force here. In upholding the ordinance, the court said:

"All of the cases show that milk ordinances are based upon the power of municipalities to protect the health of their inhabitants by providing for the sale of pure milk, . . . the purpose back of the Ordinance is the sale of pure milk in Newport and it is directed primarily at those who seek to distribute milk therein. The distributors are the ones benefited mainly by the Ordinance, because, if they are unwilling to obtain a license to sell the character of milk provided in the Ordinance, they will be denied the privilege of doing business in the City. This disposes of the question, therefore, as to the right of the City to impose an inspection fee upon the distributors which will be adequate to inspect their plants, as well as the plants of the producers from which they purchase milk. . . .

"There is next the question as to whether the levying of the fees just mentioned is unreasonable and arbi-

trary as between distributors. For example a small distributor will pay a very small fee, while a large one, even though the major part of his milk may be sold in places other than the City, will be required to pay a much larger fee. The levy is upon a class and it involves the volume of business done or, at least, the possibilities for business. Such a plan seems reasonable to us. Because of the unusual character of the commodity under consideration and the possibility of a very small amount of impure milk contaminating a large amount of it, we fail to see how one can seriously contend that the levying of the fee on the basis of the volume of milk coming into the plant is arbitrary."

2

Appellants' (distributors) next contention that the fee levied against them, when compared with the fee levied against the producers and raw milk dairies, is arbitrary and discriminating, cannot be sustained. The evidence shows that these distributors were benefited more by these inspections than the producers. Inspections were not only made of Arkansas dairies supplying milk to appellants, but of many dairies located out of Arkansas from which appellants purchased milk to meet their needs during seasons of short supply in Arkansas.

Mr. Coleman, one of the appellants, testified: "Q. Do you feel like, Mr. Coleman, the inspection and examination of these dairies (producers) is performing a service to you? A. Yes, sir, a very valuable service both as to a distributor and producer. We couldn't do without them. . . . You see, we can't buy milk from a producer until his farm is graded up where he can produce grade 'B' raw milk, which, when pasteurized is grade 'A' milk."

What we have said above also applies with equal force to this contention.

3

Finally, appellants argue that the City has no power to require appellants to act as collection agents of the fees from the producers. We cannot agree. While it

appears that this court has never passed directly upon the point, we have, in principle, upheld such authority in such cases as *Calderera* v. *McCarroll,* 198 Ark. 584, 129 S. W. 2d 615 and *Mann* v. *McCarroll,* 198 Ark. 628, 130 S. W. 2d 721, wherein we held that the State had the authority to make retail merchants the agents for the State in the collection of the sales tax since it was incidental to the power and authority of the State to levy the tax.

The question appears to have been directly considered in the case of *Reynolds* v. *Milk Commission of Virginia,* 163 Va. 957, 179 S. E. 507. There the milk distributor was also made the collecting agent to collect the milk inspection fee from the producer on behalf of the authority imposing the fee. The Supreme Court of Appeals of Virginia said that this provision concerning the collection of the fee was "merely incident to the regulation and is proper under the police power of the State," and in *U. S. et al.* v. *Shissler et al.,* 7 Fed. Sup. 123, the court held (Headnote 7): "Burdens imposed on milk distributor as to keeping books and records, furnishing reports, and giving bond by terms of license granted by Secretary of Agriculture, held not invalid."

Finding no error, the decree is affirmed.