McClendon *v*. City of Hope.

4-9200 230 S. W. 2d 57

Opinion delivered May 29, 1950.

*James H. Pilkinton* and *Royce Weisenberger*, for appellant.

*John P. Vesey* and *W. S. Atkins*, for appellee.

MINOR W. MILLWEE, Justice. The Legislature of 1939 enacted Act 131 (Ark. Stats., 1947, §§ 19-3401 and 19-3402) authorizing municipalities to regulate the production and sale of milk and milk products sold for ultimate consumption therein in accordance with the 1939 edition of the United States Public Health Service Milk Ordinance. Section 19-3402 prescribes the form of the ordinance under which municipalities are authorized to adopt by reference the standard U. S. Public Health Service ordinance.

The City of Hope, Arkansas, passed Ordinance 537 on July 10, 1939, adopting the standard ordinance. Section 12 of Ordinance No. 537 reads: "MILK AND MILK PRODUCTS FROM POINTS BEYOND THE LIMITS OF INSPECTION OF THE CITY OF HOPE, ARKANSAS. Milk and milk products from points beyond the limits of inspection of the City of Hope, Arkansas, may not be sold in the City of Hope, Arkansas, or its police jurisdiction, unless produced and/or pasteurized under grading provisions identical with those of this ordinance; provided that the City Milk Inspector shall satisfy himself that the health officer having jurisdiction over the production and processing is properly enforcing such provisions."[1]

---

[1] The 1939 standard ordinance as amended to Dec. 3, 1942, appears in the digester's notes to § 19-3402, *supra*. Sec. 11 of the amended ordinance corresponds to § 12 of the 1939 ordinance and reads: "Milk and milk products from points beyond the limits of routine inspection.— Milk and milk products from points beyond the limits of routine inspection of the city of_____ _____ __ ___ may not be sold in the city of _____, or its police jurisdiction, unless produced and/or pasteurized under provisions equivalent to the requirements of this ordinance: Provided, That the health officer shall satisfy himself that the health officer having jurisdiction over the production and processing is properly enforcing such provisions."

In 1940 the Hope City Council passed Ordinance No. 563 which provided that no milk or cream should be sold in the city that had been pasteurized outside of Hempstead County, Arkansas, except as authorized by the City Milk Inspector.

On June 30, 1949, appellant, William McClendon, filed an application with the proper officials for a permit to sell grade A milk within the City of Hope. He proposed to transport the milk from the Borden Milk Plant in Texarkana, Texas, and to comply with Ordinance 537 and all city and state health laws and regulations. Upon being denied a permit, appellant instituted suit in the Hempstead Chancery Court on July 25, 1949, questioning the validity of Ordinance No. 563 and the action of the city authorities in refusing to grant his application for a permit. Acting on advice of counsel that Ordinance No. 563 was void, appellant on September 1, 1949, began distributing milk products at wholesale to cafes and stores in the city.

On September 6, 1949, the Hope City Council repealed Ordinance No. 563 and enacted Ordinance No. 644. Sections 2 and 5 of this ordinance are as follows: "SECTION 2. That § 12 of Ordinance 537 (§ 525 of the Digest) be and the same is hereby amended to read as follows: 'No milk or milk products, regardless of origin, may be sold in the City of Hope unless produced and/or pasteurized under grading provisions identical with those of §§ 457 to 529 inclusive of the Digest; and it shall be the duty of the City Milk Inspector to satisfy himself that such production and/or processing provisions are complied with.

" 'And no milk or milk products, regardless of origin, may be sold in the City of Hope unless the person, firm or corporation producing and/or processing said milk or milk products has paid the applicable inspection fees provided in this ordinance and holds a permit issued by the City Milk Inspector of the City of Hope. Any distributor, whether independent contractor or agent of a producer or processor, or wholesale or retail dealer,

distributing milk in the City of Hope from a producer and/or processing plant which does not hold a permit from the City Milk Inspector of the City of Hope, shall be subjected to the same penalties as set forth in § 10 of this ordinance.'

"SECTION 5. Every person or firm or corporation selling milk to or producing milk for pasteurizing, homogenizing, bottling, or other plants where milk is prepared for sale to the consumer within the City of Hope shall pay an inspection fee to the City of Hope in the sum of two-thirds (2/3c) cent per each 100 pounds of milk sold or produced by such person, firm or corporation to or for such pasteurizing, homogenizing, bottling or other plants. Such plants purchasing or receiving milk shall collect from the seller or the producer of the milk the above stated inspection fee of two-thirds cent for each 100 pounds of milk from the person, firm or corporation selling or producing the milk to or for such pasteurizing, homogenizing, bottling or other plants. The purchaser shall keep an accurate record of same and remit such money or moneys to the City Collector of the City of Hope not later than the 10th day of each month after the effective date of this Ordinance. The permit heretofore issued by the City of Hope to any pasteurizing, homogenizing, bottling or other plants within the inspection jurisdiction of the City of Hope which fails or neglects to make such collections and remit same to the City Collector of the City of Hope as herein provided, shall be revoked by operation of law, and such person, firm or corporation shall be prohibited from carrying on or doing business in the City of Hope. In no event shall the amount paid by the producer be less than five ($5.00) dollars per year."

Section 6 of Ordinance No. 644 provides: "Every person, firm or corporation operating a milk plant or place where milk or milk products are pasteurized, homogenized, mixed, condensed, or bottled, or otherwise prepared for sale to the consumer within the City of Hope shall pay to the City Collector each month on or before the 10th day of each month for the preceding

calendar month an inspection fee of one and one-third cents on each one hundred pounds of milk and/or milk products received and/or distributed, or sold or otherwise disposed of, except in the case of sweet cream. . . ."

On September 7, 1949, appellant again applied for a permit which was refused and the instant suit was filed challenging the validity of certain provisions of Ordinance 644 and praying a mandatory injunction requiring the proper authorities to issue a permit to appellant.

The answer of the city admitted most of the facts alleged in the complaint, but denied the invalidity of the ordinance as applied to appellant or anyone else. In response to the prayer of the complaint the chancellor ordered the issuance of a temporary permit to appellant pending a final hearing.

After the hearing the chancellor filed a written opinion directing the entry of a decree holding Ordinance No. 644 valid and dismissing appellant's complaint for want of equity. The decree contains the following recitals: "The Court further finds that, under the terms of the said Ordinance No. 644 the milk inspector of the City of Hope, Arkansas, is authorized to inspect the production of any milk offered for sale in the City of Hope, Arkansas; that is, to inspect the dairy herds, dairy barns and equipment and make the bacteria count, and that for such inspection the said ordinance provides a tax of two-thirds cent per hundred weight; that said milk inspector of the City of Hope, Arkansas, is, also, authorized to inspect the entire output of the pasteurizing plant where any milk is pasteurized and any part thereof offered for sale in the City of Hope, and that for said services the City of Hope is entitled to collect a tax of one and one-third cents per hundred weight on the entire production of said pasteurizing plant.

"That any fees collected from the plaintiff which prove to be in excess of the necessary expenditures by the city for the actual inspection of plaintiff's milk,

and/or the source of his supply, must be refunded to the plaintiff by the City at the end of the year.

"That the evidence in this case shows that plaintiff's products presently meet all the requirements of the ordinances of the City of Hope, Arkansas, and, under such *prima facie* showing, the plaintiff is entitled to a continuation of his permit to sell milk in the City of Hope, Arkansas, as long as his product meets the requirements of Ordinance No. 537 of the ordinances of the City of Hope, Arkansas, and as long as he pays the fees called for by Ordinance No. 644, in accordance with this decree."

The evidence offered by appellant at the final hearing discloses the following undisputed facts: The Borden Milk Company, which is the sole source of the milk supply sold and distributed by appellant, is located at Texarkana, Texas. Appellant procures milk at wholesale prices from the Borden plant and transports it about 30 miles to Hope, Arkansas, in a refrigerated truck. The milkshed of the Borden plant includes 63 dairies and farms located in Miller County, Arkansas, and Bowie County, Texas. The Borden milk plant and the producing dairies from which it processes its raw milk for pasteurization and bottling are equipped, and the milk handled and processed, under supervision of the City Milk Inspector of Texarkana, Texas, and the state health departments of both Texas and Arkansas. Both the City of Texarkana, Texas, and Texarkana, Arkansas, have adopted the U. S. Public Health Service Milk Ordinance under which the City of Hope operates. The Borden plant and its milkshed are duly inspected in accordance with the provision of the standard milk ordinance. Milk products pasteurized at the Borden plant are sold and distributed in many other cities in both Texas and Arkansas.

The rating of raw milk sold to plants in Texarkana, Texas, under the standard ordinance has for a long time been in excess of 90% and the city was recently awarded a Standard Milk Ordinance Honor Roll Certificate which

is only made to cities having a superior rating on both raw and pasteurized milk and milk products.

The Borden plant pays fees of approximately $300 annually to support the inspection work carried out by the Texarkana authorities in compliance with the terms of the standard ordinance. Appellant sells the products in the original sealed bottles and cartons in which they are placed by the Borden plant. The Borden plant processes more than 12 million pounds of milk annually. Under §§ 5 and 6 of Ordinance No. 644, appellant would be required to pay to the City of Hope approximately $2,500 annually in inspection fees in duplication of inspection services already performed by Texarkana authorities under the uniform ordinance. Such schedule of fees would be prohibitive as applied to appellant and the payment thereof would force him out of business.

Dr. Hubert Shull has been City Milk Inspector for both Texarkana, Arkansas, and Texarkana, Texas, for the past 24 years. He testified in detail as to the manner of inspecting, grading and rating of the respective dairies and plants in the Texarkana inspection area which is carried on in accordance with the forms and practices set up by the standard ordinance. The inspection process employed has been checked and approved by both the U. S. Public Health Department and the Arkansas State Health Department. It would require an outside inspector several months to make the inspections and do the work of Dr. Shull and his assistants, while it would only require several hours to determine from the records kept by the inspector and a limited examination of the plants and dairies to determine whether the requirements of the standard ordinance are being met.

The learned chancellor held Ordinance No. 644 and the inspection fees provided therein valid as applied to appellant on the authority of *Terry Dairy Products Co.* v. *Beard, City Collector,* 214 Ark. 440, 216 S. W. 2d 860. In seeking a reversal, appellant does not contend that the ordinance is void *in toto* and readily concedes its validity under our holding in that case, as applied to producers and processing plants located within the primary inspec-

tion limits of the City of Hope. However, it is earnestly insisted that under the undisputed facts in the instant case the ordinance is invalid as applied to appellant because it requires him to bear the expense of a duplicate inspection before he is allowed to sell milk in the City of Hope; that as applied to appellant, the fees provided are excessive and unauthorized under § 19-3401, *supra,* and the standard ordinance enacted pursuant thereto; and that the Hope Milk Inspector's demand of payment of said fees as a prerequisite to the issuance of a permit to appellant is arbitrary, unreasonable and unauthorized under the circumstances presented here. We conclude that appellant's contentions should be sustained.

A municipal corporation has no powers except those expressly conferred by the legislature or those necessarily implied as incident to or essential for the attainment of the purposes expressly declared. *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S. W. 2d 186. It is also well settled that city councils may not exceed the power given to them by the legislature and must stay within the delegated authority which must be exercised reasonably and without arbitrary restrictions. *Helena* v. *Dwyer,* 64 Ark. 424, 42 S. W. 1071, 39 L. R. A. 266, 62 Am. St. Rep. 206; *Phillips* v. *City of Siloam Springs,* 182 Ark. 139, 30 S. W. 2d 220.

The following rule is stated in 62 C. J. S. Municipal Corporations, § 429, p. 826: "The fact that a portion of an ordinance or regulation is void because it is unreasonable does not invalidate the whole ordinance, where such portion is distinctly separable from the remainder which in itself contains the essentials of a complete ordinance. The ordinance should not be set aside *in toto,* but should be permitted to stand, to the end that it may be enforced except in particular cases, where it may be made to appear that the circumstances rendered the operation of its provisions unreasonable."

In *Meridian* v. *Sippy,* 54 Cal. App. 2d 214, 128 Pac. 2d 884, it was held that a city ordinance providing that no permit should be issued to sell milk in a city unless the dairy is inspected by the city health officer was in conflict

with the state statute giving the director of agriculture the right to designate the county or city which should conduct the inspection. In holding that it was unreasonable to require double inspection of the distributors by the city and state, the court said: "Any ordinance or statute which prevents any person from engaging in a lawful business cannot be upheld unless protection of life, health or property makes it reasonably necessary. Such is not the case here. The contention of respondent if approved might result in the erection of trade barriers that would affect the economic prosperity of the whole state." See, also, *La Franchi* v. *City of Santa Rosa,* 8 Cal. 2d 331, 65 Pac. 2d 1301, 110 A. L. R. 639.

In *Terry Dairy Products Co.* v. *Beard, supra,* milk distributors in the City of Little Rock contested the amount and method of collection of inspection fees from them under an ordinance fixing a schedule of fees in the same amount as those involved in Ordinance 644. We held that such fees were not excessive as applied to said distributors. While that case also involved inspections made outside of the state, it did not involve duplicate inspections by out of state authorities or the validity of inspection fees as applied to out of state plants such as are involved here. There the Little Rock authorities had the primary responsibility of out of state inspections and there was no duplication of this service.

The police power which the legislature may delegate to municipalities is very broad and can be exercised to promote the public health, safety and welfare. In the case at bar we are dealing with a specific delegation of municipal authority in the regulation of the production and sale of milk and milk products. By §§ 19-3401 and 19-3402, *supra,* the legislature authorized municipalities to enact a specific ordinance which contains comprehensive regulations covering all phases of production, processing and distribution of milk which the lawmakers deemed adequate to properly protect the public health and safety. Section 12 of the 1939 standard ordinance provides that the City Milk Inspector shall satisfy himself that the health officer having jurisdiction over the

production and processing of milk products from points beyond the regular inspection limits of the city is enforcing the provisions of the standard ordinance before such products may be sold in the city. Thus the inspector may bar the sale of milk products from points outside the Hope inspection area that are not handled under the same or equivalent inspection provisions as provided in the standard ordinance. Under the undisputed facts here the milk sold by appellant is produced and processed under grading provisions identical with those required by the ordinance which Hope was authorized to, and did, enact. It is also undisputed that the City Milk Inspector of Hope can reasonably satisfy himself that the health officer of Texarkana, Texas, is enforcing the provisions of the standard ordinance without duplicating the inspection work of the Texarkana officer and his assistants. Under these circumstances, we hold it is unreasonable, arbitrary and beyond the power specifically delegated to the City for the Hope Milk Inspector to insist on such duplicate inspection and require appellant to pay the fees provided therefor in Ordinance 644 before he is entitled to a permit to sell milk in the city. As thus applied to appellant, Ordinance No. 644 is invalid.

In authorizing municipalities to enact the standard milk ordinance the Legislature sought to insure the purity of the milk supplied to a city's inhabitants. As evidenced by § 12 of the 1939 ordinance, it was also the legislative purpose to provide for the free flow of wholesome milk products from one community to another unburdened by unnecessary duplication of adequate inspection and the erection of prohibitive trade barriers. As applied to appellant, the fees provided in Ordinance 644 bear no reasonable relation to enforcement of the requirement that the city inspector of Hope satisfy himself that the health officer of Texarkana is enforcing the inspection provisions of the standard ordinance. If the City of Hope can impose the fees set out in Ordinance 644 and require a duplicate inspection of the Borden plant and milkshed, then every other city where products of the

Borden plant are sold could repeat the process. One of the purposes of the standard milk ordinance is to restrict the erection of prohibitive trade barriers that would result from such pyramiding of inspection fees and services.

A state cannot grant greater powers than it possesses to a municipal corporation. *Helena* v. *Dwyer, supra.* One of the objections urged against Ordinance 644 as applied to appellant is that it places a burden on interstate commerce which is unnecessary to the public health and welfare of the people of the City of Hope. State inspection laws similar in effect to the ordinance in question have been held unconstitutional by the U. S. Supreme Court. The case of *Brimmer* v. *Rebman,* 138 U. S. 78, 11 S. Ct. 213, 34 L. Ed. 862, involved a Virginia statute which made it unlawful to sell any meat slaughtered more than 100 miles from the place where it was to be sold unless inspected by local inspectors at a fee of 1 cent per pound. In holding the act void the court said: ''Undoubtedly, a State may establish regulations for the protection of its people against the sale of unwholesome meats, provided such regulations do not conflict with the powers conferred by the Constitution upon Congress, or infringe rights granted or secured by that instrument. But it may not, under the guise of exerting its police powers, or of enacting inspection laws, make discriminations against the products and industries of some of the States in favor of the products and industries of its own or of other States. The owner of the meats here in question, although they were from animals slaughtered in Illinois, had the right, under the Constitution, to compete in the markets of Virginia upon terms of equality with the owners of like meats, from animals slaughtered in Virginia or elsewhere within one hundred miles from the place of sale. Any local regulation which, in terms or by its necessary operation, denies this equality in the markets of a State is, when applied to the people and products or industries of other States, a direct burden upon commerce among the States, and, therefore, void. *Welton* v. *Missouri,* 91 U. S. 275, 281, 23 L. Ed. 347;

*Railroad Co.* v. *Husen,* 95 U. S. 465, 24 L. Ed. 527; *Minnesota* v. *Barber,* 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455, above cited.''

A headnote to the case of *Standard Oil Co.* v. *Graves,* 249 U. S. 389, 39 S. Ct. 320, 63 L. Ed. 662, reads: ''A law of the State of Washington requires that products of petroleum, intended for use or consumption in the State, shall be inspected before being sold or offered for sale, and imposes fees for inspection by which in 10 years over $335,000 was collected, of which only about $80,000 was disbursed for expenses, leaving a revenue of over $255,000. *Held,* in respect of such products imported from another State for sale in Washington, that the charge is excessive and an unconstitutional burden on interstate commerce.''

It is undisputed that if appellant is required to pay the fees for duplication of the work of the Texarkana authorities he would be driven out of business. While § 8 of Ordinance 644 provides that excess fees shall be returned at the end of the year ''upon approval by the Council,'' we hold that the City of Hope is unauthorized under our statute and the standard ordinance to require the payment of such fees where it is undisputed that the Texarkana authorities are enforcing the provisions of the standard ordinance. We do not hold that the City of Hope is precluded from assessing such fees as may be necessary and reasonable for the Hope Milk Inspector to satisfy himself that the Texarkana health officer is properly enforcing the provisions of the standard ordinance as provided by § 12 of Ordinance 537. Nor do we hold that the city may not impose reasonable fees for inspection of milk brought into the city to determine whether it is wholesome and being transported under refrigeration requirements of the standard ordinance. What we do hold is that the fees fixed in Ordinance 644 based on a duplication of inspection of the Borden milkshed and plant are excessive, unreasonable, an unnecessary burden on interstate commerce and unauthorized by Act 131 of 1939 as applied to appellant.

The decree is accordingly reversed and the cause remanded with directions that a mandatory injunction issue requiring the issuance of a proper permit to appellant so long as he complies with Ordinance No. 537 of the City of Hope, the regulations of the State Health Department, and the payment of such reasonable inspection fees as may be fixed by the City of Hope in the proper enforcement of the standard ordinance.

GRIFFIN SMITH, C. J. and McFADDIN, J., not participating.