**DUNCAN PARKING METER CORPORATION, Plaintiff,**

v.

**CITY OF GURDON, Audrey Morris, Mayor, R. M. Davidson, Ruby Shepherd, Emmit Cecil, C. B. Foshee, David Malcolm, Paul Stephens, Councilmen, and Dick Jackson, City Attorney, Defendants.**

Civ. A. 670.

United States District Court
W. D. Arkansas, Hot Springs Division.

Nov. 23, 1956.

Robert W. Griffith, Charles B. Thweatt, Little Rock, Ark., for plaintiff.

John H. Lookadoo (Lookadoo, Gooch & Lookadoo), Arkadelphia, Ark., for defendants.

JOHN E. MILLER, District Judge.

The plaintiff and the defendants have each filed motions for summary judgment. The parties have filed briefs supporting their respective contentions, and the motions for summary judgment are now before the Court for final disposition.

The pleadings and affidavits disclose the following undisputed facts:

Plaintiff is an Illinois corporation. The defendant, City of Gurdon, is a municipal corporation, a city of the second class, organized and existing under the laws of the State of Arkansas, and located in Clark County, Arkansas; the defendant, Audrey Morris, is the duly elected, qualified, and acting mayor of said city; and the remaining defendants are the duly elected, qualified, and acting members of the City Council of said city. The amount involved, excluding interest and costs, exceeds the sum of $3,000.

On March 11, 1953, the plaintiff company and the defendant city entered into a written Trial Lease Agreement, whereby the plaintiff agreed to lease defendant city 170 parking meters at an agreed value of $61.50 per meter. Among other things, the plaintiff agreed:

"7. To permit the City to terminate this lease after a trial period of twelve (12) months of actual operation of the meters upon written notice given by the City to the Company at 835 North Wood Street, Chicago 22, Illinois, or at such other address as may hereafter be designated in writing by the Company, during the thirty (30) day period following the expiration of said trial period. The Company will, after receipt of such notice, at its own expense, remove the meters and repair any damage caused by such removal. Time is of the essence of the provisions of this paragraph."

The City agreed to lease and to permit the installation of the meters and to pay out of the receipts from their operation, first, the cost of freight and installation, and thereafter 50 percent of the net revenue from the meters each month until the full value of the meters was paid, unless the defendant City exercised its option to terminate the lease.

The City further agreed to enact, maintain, and enforce appropriate ordinances relating to the installation, maintenance, and operation of the parking meters.

The sole obligation of the City to pay for the meters was to be from the receipts obtained from the operation thereof.

Section 24 of the contract provides as follows:

"The Company agrees that it will not install the parking meters provided for in this lease agreement until the City Government is authorized by law to make such installation. That is the Company will not make the actual installation if the City is petitioned to call a referendum on the installation ordinance and the said election results are against the installation of parking meters."

On June 18, 1953, pursuant to and in compliance with the contract, the City Council passed Ordinance No. 193 providing for the installation and operation of the parking meters. No referendum petition was filed within thirty days after the enactment of the Ordinance.

On September 8, 1953, pursuant to said contract and Ordinance, plaintiff delivered and installed approximately 255 meters, which the City accepted. On September 16, 1953, the City began operating the parking meters, and beginning in December, 1953, and each month thereafter defendant paid plaintiff its portion of the parking meter revenue.

In June, 1954, a petition (under the Initiative and Referendum Amendment to the Arkansas Constitution) was filed by the legally required number of voters of the City asking that the citizens be permitted to vote on whether or not they wanted the parking meters. In accordance with the request the proposed ordinance was prepared and the matter was referred to the election commissioners of Clark County, Arkansas, to be voted on during the general election to be held on Tuesday, November 2, 1954.

The City Council then discussed the question of the time remaining under the Trial Lease Agreement. The twelve-month trial period was due to expire September 16, 1954, and the City would have thirty days thereafter in which to exercise the option to terminate the contract. The Mayor was instructed to contact plaintiff company and to explain the situation. The Mayor made a telephone call to plaintiff's Vice President, R. H. Hardman, and explained to him that the petition had been filed and that there would be a vote in November, 1954, as to whether or not the City would keep the parking meters. The Mayor told Mr. Hardman that unless an extension of the Lease Agreement was granted the City would exercise its option of having the parking meters removed, since there was no way of knowing what the outcome of the election would be. Mr. Hardman asked the Mayor how he thought the election would come out, and the Mayor replied that Hardman's guess was as good as his.

The affidavit of the Mayor contains the following statements:

"Mr. Hardman asked me how much time I thought that we would need and I told him ninety (90) days should be sufficient and he asked me to write him a letter just asking for an extension of 12 months, but he understood that if the parking meters were voted out, in the election in November of that same year, 1954, that we would not want them and that would be the end of the parking meters in Gurdon. At no time did Mr. Hardman, or anyone else ever indicate to me that we would be expected to fulfill this lease agreement contract if the parking

meters were voted out. I am sure that Mr. Hardman knew that it was my understanding that if the parking meters were voted to stay in force that we would purchase the meters and that if they were voted out that we would expect them to be removed."

On September 8, 1954, in accordance with the request of the Vice President of the plaintiff, the Mayor wrote plaintiff the following letter:

"Please extend the lease for a period of twelve (12) months trial."

On September 13, 1954, plaintiff's Vice President Hardman wrote the Mayor as follows:

"In response to your request dated September 8, for an extension of the trial period of the Trial Lease Agreement dated March 11, 1953, between your City and our Company, we are pleased to grant this extension, causing the trial period to expire September 8, 1955.

"This letter will serve as your authority for the extension."

At the general election there were 260 votes against the meters and 253 votes for the meters.

Thereafter the plaintiff was notified of the outcome of the election and was asked to remove the meters.

On December 12, 1954, the City Council passed Ordinance No. 199, requiring the removal of the heads from all the parking meters and repealing all ordinances in conflict therewith.

The affidavit of Hardman indicates that the last payment made to plaintiff by defendants was on December 10, 1954. (It appears that the meters were actually operated until that time because there was some doubt as to the result of the voting.) The total charges made by plaintiff to defendants for the parking meters, plus freight and installation, was $17,160.69. The total payment (including credit for some meters which were returned) made by the defendant City was $3,878.69.

The affidavit of Hardman further discloses that during the months from January, 1954, to November, 1954, the average monthly rental payment from the City to plaintiff was $194.84.

Plaintiff contends that there is no material issue of fact remaining and that it is entitled to judgment in its favor as a matter of law. Likewise defendants contend that there is no material issue of fact and that they are entitled to judgment in their favor as a matter of law.

The Court agrees that there is no material issue of fact and that the sole question before the Court is one of law. And the Court is convinced that defendants' motion for summary judgment must be sustained, since the City had no power to enter into a contract which would limit the rights of the people under the Initiative and Referendum Amendment to the Arkansas Constitution, Amendment 7.

As a matter of fact, there is some question as to the validity of the contract at the time of its execution. Plaintiff contends in its brief that:

"Express authority was given by Act 89 of 1953 (Ark.Stats. 19–3533, et seq.) for the passage of the ordinance for the installation and operation of the meters, and such express authority, by necessary implication, included the authority to make the contract for their installation and operation. When the 30 day period for a referendum of the ordinance had expired, the contract was as effective and binding as any other contract."

■ The difficulty with plaintiff's contention is that Act 89 of 1953 was not in effect at the time the contract was entered into. The Act, which is now set forth in Sections 19–3533 and 19–3534, Ark.Stats., was approved on February 18, 1953. However, the Act contained no emergency clause and, therefore, did not go into effect until 90 days after the adjournment of the Legislature. City of Melbourne v. Billingsley, 210 Ark.

1028, 198 S.W.2d 840, and cases cited therein. The Legislature adjourned on March 12, 1953, and thus Act 89 did not become effective until June 10, 1953. The contract in question was executed on March 11, 1953, and clearly it could not have been entered into under the authority of Act 89, since the Act was not in effect at that time.

The Act that was in effect at that time was Act 309 of 1939, which provided:

"Hereafter cities of the first and second class and incorporated towns are prohibited from installing devices commonly known as parking meters or other devices designed to require automobile owners to pay for the privilege of parking on the streets of said cities or towns. Provided, however, that any city of the first or second class or incorporated town desiring to install such devices may do so after adopting a local measure authorizing such installation in accordance with the provisions of the Initiated [Initiative] and Referendum Amendment to the constitution of 1874."

Since the contract in question contained no provision requiring the adoption of a local measure in accordance with the Initiative and Referendum Amendment, it could be argued that the contract was void for absence of authority in the officials of defendant city to execute it. See, Deaderick v. Parker, 211 Ark. 394, 398, 200 S.W.2d 787. But, Section 24 of the contract provided the plaintiff would not install the parking meters until the City was authorized by law to make such installation, and the meters were not installed until after the effective date of Act 89 of 1953, and after the enactment of Ordinance No. 193. Therefore, the Court is of the opinion that the contract was not void at the time it was executed.

However, Ordinance No. 193, providing for the installation of the meters, and the contract between the plaintiff and the City are valid only insofar as they are in accord with the power of the City to make such contracts and to enact such ordinances. Section 2 of Act 89 of 1953 provides:

"Any municipal ordinance authorizing the installation of Parking Meters shall not be subject to an Emergency Clause; and nothing in this act shall limit the rights of the people under the Initiated [Initiative] and Referendum Amendment to the Constitution of 1874."

The ordinance in the instant case was passed June 18, 1953, which was after Act 89 became effective. The ordinance contained an emergency clause, contrary to the provisions of the Act, but, of course, this would not be a fatal defect. If, however, the ordinance should be construed as in any way limiting the rights of the people under the Initiative and Referendum Amendment to the Arkansas Constitution, the ordinance would be invalid under Section 2 of Act 89 of 1953.

In other words, "a municipal corporation has no powers except those expressly conferred by the legislature or those necessarily implied as incident to or essential for the attainment of the purposes expressly declared". McClendon v. City of Hope, 217 Ark. 367, 374, 230 S.W.2d 57, 61; Portis v. Board of Public Utilities of Lepanto, 213 Ark. 201, 205, 209 S.W.2d 864; City of Stuttgart v. Strait, 212 Ark. 126, 131, 205 S.W.2d 35. And see especially, Bennett v. City of Hope, 204 Ark. 147, 161 S.W.2d 186.

Act 89 of 1953, while permitting ordinances allowing parking meters, expressly provides that nothing in the Act should limit the rights of the people under the Initiative and Referendum Amendment to the Arkansas Constitution. Therefore, the City had no power to enter into any contract or to enact any ordinance which would limit the rights of the citizens under said Amendment.

Plaintiff apparently recognized at least part of the limitation that might be placed on the City by providing in Section 24 of the contract that the me-

ters would not be installed if the City was petitioned to call a referendum on the installation ordinance and if the election results were against the installation of the parking meters. But plaintiff evidently overlooked the fact that the rights of the people under the Initiative and Referendum Amendment included not only the right of referendum but also the right to initiate ordinances. Amendment 7, Arkansas Constitution. And, as heretofore stated, the statute authorizing the installation of parking meters specifically provided that it did not limit the rights of the people under Amendment 7, which necessarily would include the right to initiate an ordinance against parking meters as well as the right of referendum.

A person contracting with a municipal corporation is charged with notice of its limited powers and must, at his peril, inquire into its powers. Laramore & Douglass, Inc., v. City of Anderson, Ind., 7 Cir., 222 F.2d 480; U. S. v. City of Charleston, D.C.W.Va., 93 F. Supp. 748; 63 C.J.S., Municipal Corporations, § 979.

The contract in the instant case was subject to the rights of the people under the Initiative and Referendum Amendment. The people exercised that right and voted against the parking meters. Plaintiff, being charged by law with notice of this right of the people to initiate an ordinance requiring the removal of the parking meters, has no legal complaint when the people exercise that right. Stated differently, if the contract should be construed to limit the rights of the people under Amendment 7, it would be void as being in excess of the power of the City under Act 89 of 1953.

Plaintiff not only was charged with notice of the people's right to initiate an ordinance against the parking meters, but it also had actual notice, prior to the conclusion of the trial period under the original contract, that such an initiated ordinance would be voted on in November, 1954. Plaintiff was notified by the Mayor that the City would exercise its option of terminating the con-

tract unless an extension was granted to enable the parties to ascertain the result of the election. Having actual knowledge of the approaching election at the time it extended the trial period, plaintiff is in no position to complain when the election results are against the meters. And, as heretofore stated, if the contract, or the extension thereto, were construed to limit the people's right to initiate an ordinance, it would be in excess of the power of the City and would be void.

It follows that plaintiff has no legal claim against defendants under its contract, and therefore defendants' motion for summary judgment should be sustained.

A judgment in accordance with the above should be entered.