· RAILWAY COMPANY *v.* PETTY.

Opinion delivered March 11, 1893.

1. *Railway—Power to condemn land.*

   A railway company which undertakes to exercise the power to condemn property for its use must show a legislative warrant for the power and establish that the proposed use of the property sought to be condemned is within the legitimate scope of its organization.

2. *Condemnation—Public use.*

   Where a side track at a particular point is shown to be necessary for legitimate railroad purposes, the railroad company will not be enjoined from condemning land therefor because a side track at that place will also further private interests, as by furnishing shipping facilities to a coal company.

3. *Discretion of railway in locating side tracks.*

   In the absence of clear abuse, the discretion of a railroad company in placing additional side tracks upon one side of its main track, rather than the other, will not be interfered with.

4. *Power to condemn not exhausted by one exercise.*

   The power of railroads to make necessary side tracks means to make them when they become necessary; otherwise it would be the power to make unnecessary side tracks. Such a power may be exercised when necessary, and hence is not exhausted by one exercise.

Appeal from Sebastian Circuit Court in Chancery, Greenwood District.

R. T. POWELL, Special Judge.

The St. Louis, Iron Mountain & Southern Railway Company instituted proceedings to condemn land belonging to E. B. Petty, for the purpose of constructing an additional side track north of its main track near Jennie Lind station in Sebastian county, and, after depositing with the clerk the amount designated by the circuit judge as the value of the land, took possession thereof and laid its track.

Subsequently, Petty, who had a coal mine about 200 yards south of the land sought to be condemned, brought this suit to enjoin the railway company from taking his land, upon the ground that the condemnation proceeding was instituted for a private and not for a public use, namely, to furnish shipping facilities to the Western Coal & Mining Company, whose mine immediately adjoined the land sought to be condemned for use as a side track.

The court, upon the hearing, decreed in favor of plaintiff. Defendant has appealed.

Upon the question whether the condemnation proceeding was instituted for a public or private use, the evidence is sufficiently stated in the opinion.

*Dodge & Johnson* for appellant.

1. The right of eminent domain exists in the State in her sovereign capacity as an inherent right, and is only limited by the constitution. 28 Kas. 453; Wood, Ry. Law, sec. 638; Const. Ark. art. 2, sec. 23; art. 2, sec. 22; art. 12, sec. 9. She may delegate this power, and has done so to railroads. 30 N. Y. 174; 10 A. & E. R. Cas. 335; 75 Va. 78; 40 Am. Rep. 743; 17 W. Va. 812; Mansf. Dig. sec. 5458. The "right of way" includes all grounds necessary for side tracks, turnouts, depots, workshops, etc. *Ib.* 5468. The company complied with section 5464.

2. The petition to condemn need only show a *prima facie* right to take the property which cannot be assailed in a collateral proceeding. To establish a *prima facie* case, the petition is only required to prove the incorporation of the company, the use of its franchise, survey of the route, and the necessity of taking the land. 112 Ill. 601; 119 *id.* 287; 38 N. J. L. 17; 125 Ill. 600; 105 *id.* 110; 33 A. & E. R. Cases, 156. The testimony shows that the land is sought for a *public* purpose; the fact

that some persons may be specially benefitted does not deprive the improvement of its public character. As to what is a *public* use, see Mills, Em. Dom. secs. 12, 14; Wood, Ry. Law, sec. 226; 34 Fed. Rep. 387; 23 Cal. 324; 47 N. J. L. 44; 18 Cal. 251; 31 *id*. 368; 19 Pac. Rep. 78; 99 U. S. 463; 42 Oh. St. 202; 16 Gray, 416.

3. As to the *necessity* for the taking, it is settled that the company must determine what lands are necessary for its use. It is a legislative question, not a judicial one, and the legislature has lodged the power in the railroads. The only limitation seems to be that it must be for a public purpose. See 6 A. & E. R. Cas. 504; 9 H. L. C. 246; 105 Ill. 513; 13 Neb. 361; 1 Wood, Ry. Law, 646, 647, 648, 660; 52 Ark. 330; 71 Ill. 334; 100 Ill. 112; 109 *id*. 244; 7 Ch. App. Cases, 364; Lewis, Em. Dom. sec. 279; 33 A. & E. R. Cases, 162 and notes; 43 Ark. 121; 31 *id*. 500.

4. Courts of equity will not enjoin condemnation proceedings, unless the company is clearly abusing the discretion and power granted by the legislature. 14 Wisc. 609; 80 Am. Dec. 793; 21 N. Y. 597; 96 N. Y. 358; 41 Ind. 371; 2 D. R. & S. 330; 3 Deg. & J. 286; 4 M. & C. 116; 13 Ch. Dec. 268; 12 Ch. Dec. 1; 3 Q. B. Div. 258. It is no objection that other lands in the vicinity might be obtained that would answer the purpose. 34 Vt. 284; 8 Phil. 345; 46 N. Y. 546; 1 Wood, Ry. Law, sec. 225; 17 A. & E. R. Cas. 160.

5. As to the right to condemn, see 17 A. & E. R. Cas. 160; 36 Pa. St. 332; 48 *id*. 359; 79 *id*. 257; 5 A. & E. R. Cas. 395; Acts 1853, p. 177; 10 A. & E. R. Cas. 15; Lewis, Em. Dom. sec. 646; 7 N. J. Eq. 75; 74 Ga. 350. The making of a public improvement cannot be enjoined on the ground that it is unnecessary or is being made to further private ends. 75 Ill. 731; 36 Me. 518.

*Winchester & Bryant* for appellee.

1.   Appellee could not raise the questions that the land is sought to be condemned not for its own use but for a private coal company and that it is not needed by the railroad company, but is an effort gotten up in the interest and for the benefit of said private corporation; and hence his only remedy is in equity.   43 Ark. 121; 4 N. J. Eq. 47–57; Lewis, Em. Dom. sec. 632; 17 Ill. 128–130.

2.   The right of eminent domain cannot be delegated except for *public use*, and the question what is "public use," in any given case, must be left to the courts. The use, the "necessity" for the taking, the *bona fides* of the act, are legitimate and proper matters for judicial investigation.   Rorer on Railroads, p. 293–4; 98 Mo. 215; 34 Ala. 311; 41 Cal. 147; 51 *id.* 269; 6 Ga. 130; 25 Iowa, 540; 37 Md. 537; 16 Gray, 417; 34 Minn. 227; 8 West. Rep. 248; 27 Mo. 373; 11 Nev. 394; 1 N. J. Eq. 694; 18 *id.* 54; 6 Cald. 150; 44 Vt. 648; 21 W. Va. 534; 116 Ill. 449.   The burden is on the corporation to show the "public use" and the "necessity."   6 A. & E. Enc. Law, p. 541; 58 Iowa, 537; 66 N. Y. 407, 571; 43 N. Y. 137; 52 Wis. 537; 108 Mass. 206; 48 Fed. Rep. 615.

3.   The right of eminent domain cannot be exercised a second time.   31 N. J. L. 208; Mansf. Dig. sec. 5447, par. 4.

4.   The testimony shows and substantiates the allegations of fraud and conspiracy contained in the complaint.

1.  Power of railway to condemn land.
COCKRILL, C. J.   A railway company which undertakes to exercise the power to condemn property for its use must be able to show a legislative warrant for the power, and to establish that the proposed use of the property sought to be condemned is for a purpose within the legitimate scope of its organization.   *In the matter*

*of Niagara Falls & Whirlpool Ry.* 108 N. Y. 375;
*Chicago etc. R. Co.* v. *Wiltse*, 116 Ill. 449; *Tracy* v. *Railway*, 80 Ky. 259.    Has the railway company in this case
brought itself within either branch of this rule?    These
are questions presented by this appeal.

The petition filed by the railway to condemn the
land in question sets forth that it is the successor to
the Cairo & Fulton Railroad—a line located north and
south through the State; that the charter of that com-
pany authorizes the building of branches from its main
line, and "that a branch of its road is surveyed and lo-
cated over and upon" the land in question, which is
situate in Sebastian county.    The complaint in this case,
which is filed by the land owner to enjoin the prosecu-
tion of the condemnation proceeding, and the proof taken
in the cause, show that the company is operating a line
of railway between two points in Sebastian county.
Nothing more is shown in relation to the building, sur-
vey or location of the road.    We know judicially that
Sebastian county is in the extreme western part of the
State and remote from the line of the old Cairo & Ful-
ton Railroad.    That railway had the legislative warrant
to build branches; but a branch is an offshoot of the
trunk and cannot exist independently of it.    A discon-
nected road is an independent line, and not a branch.
The charter of the Cairo & Fulton Railroad conferred
no authority upon that corporation to build independent
lines or branches from other lines.    It had no legislative
warrant, therefore, to exercise the power of eminent do-
main for that purpose.

Without halting to consider whether the appellant
can exercise the privilege of the Cairo & Fulton Railroad
to build branches without complying with the general
law for the construction of railways, the question
whether the court is at liberty to treat the road in Sebas-
tian county as a branch of the St. Louis, Iron Mountain &

Southern Railway has given me no little concern. There is no indication in the record that it has or is intended to have any connection with the main line. There is not even an allegation to that effect. Conceding that the Cairo & Fulton Railroad could have begun the construction of a branch at a point far removed from the main line, the power to take property *in invitum* for the purpose could not have been exercised except upon a clear showing of a *bona fide* intent to push the enterprise through presently to the trunk connection which alone authorized its existence. But we leave the question open because the appellee has not challenged the company's authority on that ground either here or in the lower court. It may be that the facts which were known to the parties justified the conclusion that the legislative warrant existed, and that they refrained from entering upon the enquiry in the trial court for that reason. For the purposes of this case, therefore, we take it that the railway has legislative authority for the exercise of the power of eminent domain on the line designated in Sebastian county.

The vexed question for determination is, is the company seeking to condemn the land for railroad purposes— that is, for public use?

2. As to what is a public use.
The appellee argues that the proof shows that the railway's proceeding to condemn is prosecuted, not for its own use, but for the use and benefit of the Western Coal & Mining Company, a corporation which owns and operates a coal mine near the appellant's line of railway. The managers of the railway were probably instigated by the coal company to institute the condemnation proceeding, and they doubtless intended that the coal company should derive a benefit therefrom. But those facts alone do not furnish a legal reason sufficient to warrant judicial interference with the power delegated to the corporation by the legislature. If the land is needed for

legitimate railroad purposes, the motive which influenced the railway managers in undertaking the work will not take from it' its public character. A proposed public user will not be enjoined by the courts upon the ground that it will further private interests. *De Camp* v. *Hibernia Ry.* 47 N. J. L. 44; *National Docks R. Co.* v. *Central R. Co.* 32 N. J. Eq. 755; *South Chicago R. Co.* v. *Dix*, 109 Ill. 237; *Dunham* v. *Hyde Park*, 75 *id.* 371; Lewis, Em. Dom. sec. 646.

A railway cannot exercise the right of eminent domain to establish a private shipping station for an individual shipper. If the station is for the exclusive use of a single individual, or a collection of individuals less than the public, that stamps it as a private use, and private property cannot be taken for private use. The fact that the railway's business would be increased by the additional private facilities is not enough to make the use public. *Rensselaer etc. Ry.* v. *Davis*, 43 N. Y. 137. To be public the user must concern the public. If it is an aid in facilitating the business for which the public agency is authorized to exercise the power to condemn, or if the public may enjoy the use of it not by permission but of right, its character is public. When once the character of the use is found to be public, the court's enquiry ends, and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user. It is common for the interest of some individuals to be advanced, while that of others is prejudiced, by the location of railway stations and switches when there is no motive on the part of the railway officials to discriminate between them. That result is seen in the original location of every line of railway. But the courts do not assume to interfere with the right of the company to locate its line, stations or switches. In this case, the railway located its sidetracks contiguous to the mine of the coal company, rather

than to that of the appellee who is a rival miner. The evidence is abundant that side tracks were necessary to facilitate and hasten the business offered to the company at that point. That, of itself, is sufficient to give public character to the use to which the land was to be devoted. Moreover, at that point upon this very land, as the proof shows, there is established a shipping station for coal. The railway's franchise empowers it to establish none but public stations. It can place no unreasonable restraint on the right of the public to use it. If the railway maintains a coal shipping station at that point, and unreasonably refuses to accord to the appellee, or others who have occasion to ship coal therefrom, facilities for doing so, the courts can afford a remedy for the wrong ; and if the railway abuses the privilege of condemning private property for a public use by turning the property acquired by condemnation to a private use, doubtless the easement it acquired by condemnation may be revoked, and the possession restored to the owner of the fee.

The fact that tracks are extended upon the lands of the coal company for its exclusive use is not a matter to concern the appellees, for the reason before stated—that is, a public use is first subserved. If no use could be made of the side tracks except to subserve the interest of the coal company, the power to condemn could not be exercised for that purpose. *Sholl* v. *German Coal Co.* 118 Ill. 427. But, as we have seen, that is not this case.

In the case of *De Camp* v. *Hibernia R. Co.* 47 N. J. L. 44, one terminus of the railroad which sought to exercise the right of eminent domain was under ground and on private property, so that the public had no means of access to it at that point. The charter of the company authorized it to become a common carrier of freight only. The court held that lands along the route could be taken against the will of the owner, and gave these

reasons for the ruling : "Every one of the public having occasion to send materials, implements or machinery for mining purposes into, or to obtain ores from, the several mining tracks adjacent to the location of this road, may use this railroad for that purpose, and of right may require the company to serve him in that respect, and that is the test which determines whether the use is public. * * * It is the right which characterizes the enterprise, and that is public."

In the case of the *South Chicago Ry.* v. *Dix*, 109 Ill. 237, the railway company laid out a side track, one terminus of which was at the water works of a village, and was there used to deliver coal for the use of the water works. The side track was built apparently in obedience to an ordinance passed by the village attempting to require the railway company to reach its water works. The court held that the power of eminent domain could be exercised to take land for the side track, saying : "It is insisted that this is a mere private use, and that the track was built to serve this use. * * * This certainly shows that the track does serve this private use, and that it was designed to do so ; and if it served this use merely, and was not an aid in the convenient operation of the main line of the railroad, appellee's position would be maintained. But if, in addition to serving such use, the track be one which is necessary for the convenient operation of the railroad, then it may properly come within the purview of a side track. A side track can surely be none the less such because, in addition to the purposes of a side track proper, it subserves some other private individual use." That case is not unlike the one in hand.

There are numerous cases holding that a railway built for the purpose of reaching a coal mine or a manufacturing establishment is a public enterprise entitled to exercise the power of eminent domain, provided the public

has the right to use it. That right makes the use public. Lewis, Em. Dom. sec. 171 and cases cited in notes; Mills, Em. Dom. sec. 28; *Kettle River Rd. Co.* v. *Eastern Ry. Co.* 41 Minn. 461; *Phillips* v. *Watson*, 63 Iowa, 28; *De Camp* v. *Hibernia Ry.* 47 N. J. L. 44; *Hays* v. *Risher*, 32 Pa. St. 169, 177.

The decision in the case of *Roberts* v. *Williams*, 15 Ark. 43, 49, is based upon the same reasoning, and sustains the theory of these cases. It is there held that an individual may exercise the right of eminent domain for the purpose of establishing a road from his premises to a public highway. The case is in harmony with the weight of authority upon the subject. For a collection of the cases, see 6 Am. & Eng. Enc. Law, 529; note to *Beekman* v. *Ry.* 22 Am. Dec. 693. *Roberts* v. *Williams* may then be said to sustain the position that the State's right of eminent domain may be exercised to lay out a public road, though it be no thoroughfare, and has one terminus on private property.

These cases furnish illustrations of what is a public use, and are valuable in the determination of this cause for that reason only. It does not follow that, because private property may be taken for the use of a railway built to connect a coal mine with the arteries of commerce, any railway may condemn land to construct a lateral road from its main line for the purpose of reaching a coal mine. Ordinarily, authority is confined to the construction of a line between given termini, and such side tracks as are necessary for the operation of the line. In such cases there is no authority to build branches or lateral roads. *Chicago etc. R. Co.* v. *Wiltse*, 116 Ill. 449; *So. Chicago Ry.* v. *Dix*, 109 Ill. 237; *Edgewood Railroad's Appeal*, 79 Pa. St. 257.

The company in this case is undertaking only to obtain land for side tracks which appear to be necessary for use in operating the road.

It is argued that the company shows no necessity for taking this land for side tracks because the right of way on the opposite side of the track extending fifty feet from its center is not occupied by tracks; and, further, that the company, having once exercised the right of eminent domain to condemn a right of way for its main line, has exhausted its power, and for that reason can condemn no more. Neither position is tenable. Having determined that the side tracks are necessary for the conduct of the company's business, the location must be left to the company's discretion, unless there is a very clear abuse of it. In this case it was only a question as to which of two competing miners should have the benefit of the location. We cannot interfere to give it to the appellee. Moreover, the proof tends to show that it would be more expensive to lay out the tracks on the appellee's side, and the width of the right of way on that side is not such as the company contends will best serve their convenience.

*3. Discretion of railway to locate sidings.*

As to the last point mentioned above, we concur in the statement of the law made in Mills on Eminent Domain at sec. 58*a*: "The power to make necessary side tracks means to make them when they become necessary; otherwise it would be the power to make unnecessary side tracks. Such a power may be exercised when necessary, and hence is not exhausted by one exercise." *Union Pac. Ry.* v. *Atchison, etc. Ry.* 5 Am. & Eng. R. Cases (Kas.), 395.

*4. Extent of power to make side-tracks*

Whether we look to the charter of the Cairo & Fulton Railroad Company or to the general railroad law, the power is given to condemn lands necessary for side tracks. Mansf. Dig. sec. 5467. See *Carmody* v. *Railroad Co.* 111 Ill. 69.

For these reasons the decree of the court is wrong. Reverse and dismiss the complaint.*

---

* As to the power to condemn a right of way for railroad sidings to private establishments, see note to the principal case in 20 L. R. A. 434 (Rep).