76   239
78    86

MOUNTAIN PARK TERMINAL RAILWAY COMPANY *v.* FIELD.

Opinion delivered July 1, 1905.

1.  CONDEMNATION PROCEEDING—DEFENSE.—As the sole object of the special proceeding for the condemnation of land for right-of-way provided by Kirby's Digest, c. 58, is to ascertain the amount of damages for which the railroad company is liable to the owner, the owner cannot defend on the ground that the company is not entitled to bring the action. (Page 242.)

2.  INJUNCTION—ABUSE OF CORPORATE POWERS.—It seems that equity will restrain an abuse of corporate powers, as where a railroad company seeks to condemn the property of individuals solely and exclusively to a private use. (Page 244.)

Appeal from Pulaski Circuit Court.

EDWARD W. WINFIELD, Judge.   Reversed.

*H. M. Armistead* and *John McClure,* for appellants.

Under sections 6545-6 of Kirby's Digest, the sole power of determining whether a particular railroad will be for the benefit of the public is vested in the board of railroad incorporation, and its decisions thereon are final and conclusive. The answer of defendants should have been stricken from the files. See, generally, upon the right of railroad companies to take private property under condemnation proceedings, and the procedure necessary therein: Const. art. 17, § 1; *Ib.* art. 2, § 22; *Ib.* art. 12, § 9; *Ib.* art. 9, § 12.

The proceeding for condemnation being a statutory one, no issues can properly be raised save those provided for by the

statute. Hence in this suit at law the only proper issues were the value of the land and the damages to the owner from taking same. Kirby's Dig. § § 2947, 2952, 2955; 52 Ark. 340; 81 Mo. 135; 45 Ark. 280; 105 Ill. 511; 38 N. J. L. 18; 13 Mo. App. 32; 43 Ark. 120; 42 Neb. 327; 3 Ore. 95.

For statutes of other States allowing other issues to be raised, see R. S. Wis. 1361; 3 R. S. N. Y. ch. 282, 1869. The right of a railroad corporation, duly organized, to exercise the right of eminent domain cannot be assailed in a condemnation proceeding. 57 Ark. 364; 32 Cal. 253; 71 Ill. 333; 30 Gratt. 799; 56 S. W. 833; 33 Oh. St. 436; 161 Mo. 305; 133 N. C. 136; 92 N. C. 578; 69 Pac. 572; 32 N. J. Eq. 759; 23 Cal. 325; 112 Ill. 601; 3 Ore. 165; 43 Ark. 120. There was no testimony before the court sufficient to authorize it to find that the railroad was not a public corporation, even if it had jurisdiction to enter upon such an inquiry.

*Rose, Hemingway & Rose,* and *J. W. & M. House,* for appellees.

The action of the board of railroad incorporation was not conclusive. This board is an unconstitutional body. *Cf.* Const. Ark. art 12, § § 2-6; *Ib.* art. 17, § 1. The facts in this case show a clear abuse of a public franchise. The court properly refused to strike the answer. 33 Am. Ry. Cas. 99; 24 Am. & Eng. Ry. Cas. 261; 43 N. Y. 137; L. R. A. 680, 690; 59 Am. Rep. 379; 20 Am. & Eng. Ry. Cas. (N. S.) 619, 620; Lewis, Em. Dom. § 393; 83 N. W. 294, s. c. 107 Wis. 192.

BATTLE, J. On the 20th of April, 1904, Mountain Park Terminal Railway Company filed a petition for condemnation of a right of way through certain lands of W. H. Field and others. "The petition is in the usual form, alleging the incorporation of the railroad company; the route of said railroad; that its road is surveyed and located in Pulaski County; that the defendants are the owners of certain lands, which are described; that said lands are unimproved; that it has failed to obtain the right of way over the said land by an agreement with the owner thereof; that it is desirous of beginning work on its railroad; and asks the court to designate a sum of money to be deposited by plaintiff for the purpose of making compensation, etc., and that a jury be impaneled to ascertain the amount of compensation to which the

owners of said land may be entitled, and that an appropriate order and judgment be entered, vesting the petitioner with a right of way one hundred feet in width through said land, etc.

"Notice was only served on the defendants, notifying them that on a certain date the plaintiff would apply to the judge of the second division of the Pulaski Circuit Court for an order fixing the amount of the possible damages that would result from the construction of said railroad over the land of the defendant."

On the 7th day of May, 1904, the defendant filed an answer as follows:

"The defendants deny the right of the plaintiff to maintain this condemnation proceeding, and say that the plaintiff was not organized in good faith for the purpose of building a railroad, nor for any public purpose, but is organized solely to carry out the private enterprise of one Charles M. Newton, who has subscribed for substantially all of the stock of said company. The fact is that on the south side of the Choctaw, Oklahoma & Gulf Railroad, along where the line of plaintiff is sought to be constructed, there is a high hill, composed entirely of stone, that is valuable for crushing into small fragments of stone, suitable for ballasting railroads, making macadam highways, the construction of concrete and other like purposes. The front of these hills cannot be utilized, because any rock blasted from them would fall upon the track of the Choctaw, Oklahoma & Gulf Railroad; but at a point where the plaintiff seeks to condemn there is a narrow gorge, penetrating said hill, up which a railroad track can be built, for a short distance, but the part of said hills, adjacent to the right of way of said railroad, belongs to defendants, who contemplate the erection of a crushing plant in said gorge. A part more remote, and further up said gorge, belongs to said Newton, who also desires to put in a crusher; but said gorge is so narrow that, if a railroad track is constructed up said gorge, so as to reach the property of said Newton, it will preclude these defendants from the erection of any crusher for their own use, and will also destroy the value of the great rock deposits which they may possess in that vicinity. The sole purpose of said Newton in seeking to condemn a right of way is merely to traverse the defendant's land in order to get to a crusher of his own, at the sacrifice of the property of these

defendants. It is impossible to build said railroad, as laid out, because the grade up to the said property, known as Mountain Park, is so steep that no railroad train could be run upon any railroad that might be built. The said Newton has caused a railroad to be surveyed, only for a distance of about 1,700 feet, just far enough to bring it to the site of his proposed crusher, and at this point the railroad survey sinks to a depth of twelve feet, into the hill, and further progress is impossible. Defendants deny that said plaintiff ever contemplates building any further or doing more than to construct a switch to reach a crusher of said Newton, and they deny that any public purpose will be subserved by the building of the proposed railroad. The railroad of the plaintiff is laid out to run from the city of Little Rock to said Mountain Park; but these defendants say this is merely a pretense and a scheme to perpetrate a fraud upon the law and upon this honorable court, and that the plaintiff has taken no steps to acquire the right of way, save the few feet that are necessary to reach from the Choctaw, Oklahoma & Gulf Railroad, to the site of the proposed crusher of the said Newton."

Plaintiff filed a motion to strike the answer from the files of the court, and on the 21st of May, 1904, the court overruled the same. After hearing the evidence, the court found that the proposed construction is for private purposes, and the right of eminent domain does not exist in this case, and dismissed the petition.

Did the court err in overruling the motion to strike the answer from the files?

The proceeding prescribed by statute for the condemnation of land for right of way for a railroad is special. Section 2947 of Kirby's Digest provides: "Any railroad * * * company, organized under the laws of this State, after having surveyed and located its lines of railroad, * * * shall, in all cases where such companies fail to obtain, by agreement with the owner of the property through which said lines of railroad * * * may be located, the right of way over the same, apply to the circuit court of the county in which said property is situated, by petition, to have the damages for such right of way assessed, giving the owner of such property at least ten days' notice in writing of the time and place where such petition will be heard."

Section 2952 provides: "It shall be the duty of the court to impanel a jury of twelve men, as in other civil cases, to ascertain the amount of compensation which such company shall pay, and the matter shall proceed and be determined as other civil causes." Section 2955 provides: "Where the determination of questions in controversy in such proceedings is likely to retard the progress of the work on or the business of such railroad company, the court, or judge in vacation, shall designate an amount of money to be deposited by the company." Section 2954 provides: "In all cases where damages for the right of way for the use of any railroad company have been assessed in the manner hereinbefore provided, it shall be the duty of such railroad company to deposit with the court or to pay to the owners the amount so assessed, and pay such costs as may, in the discretion of the court, be adjudged against it, within thirty days after such assessment; whereupon it shall and may be lawful for such railroad company to enter upon, use and have the right of way over such lands forever." From these statutes it appears that the sole object of the proceedings provided for by them is to ascertain the damages that the railroad company shall pay for right of way. They seem to assume that the railroad company is entitled to the right of way upon making compensation for same.

In *Neimeyer & Darragh* v. *Little Rock Junction Railway*, 43 Ark. 111, the appellants sought to enjoin the railroad company from building its road along a certain alley and taking certain lots, alleging in their complaint "that the organization of the company was a fraud upon the State, in this, that it was not a *bona fide* company organized to build and operate a railroad company as pretended, but in effect a bridge company, taking the guise and semblance of a railroad company for the purpose of building, using, and deriving service from the bridge with the exemption from taxation accorded by statutes to the bridges of railroads," etc. One of the questions in that case was, was not the appellants barred from maintaining their suit by the proceedings instituted by the railroad company for right of way? The court said: "Nor is it at all clear to our minds that the appellants have a full, complete remedy at law, to be obtained by way of defense to the special proceedings in the circuit court for condemnation. The Junction Company, in all purely legal

aspects, is a proper corporation, clothed with franchise of eminent domain to the extent of its necessities. The proceeding under our statutes is a special one, directed solely to the object of determining the compensation to be paid the owner of property proposed to be taken. No provision is made for any issue upon the right to condemn. It could not there be proved that the Junction Company was not a corporation. To attack its existence collaterally is not permissible. A plea in the nature of *nul tiel corporation* would not be safe, in the face of complete articles of association. Besides, it is plain that the Legislature never contemplated any such defense as a want of right to condemn in the corporation. For, where the proceedings are liable to delay, it is made the duty of the court to fix a sum to be deposited by the company, and to allow the property to be taken and used, in anticipation of the settlement of damages." See also *Bentonville Railroad* v. *Stroud,* 45 Ark. 280.

It follows, then, that the court erred in overruling plaintiff's motion, and trying the issue presented by the defendants' answer.

But are the defendants without a remedy? Property cannot be taken from its owner without his consent, even under an act of the Legislature, and appropriated solely and exclusively to the private use of another person or corporation. Courts have the power to determine whether a particular use for which private property is authorized by the Legislature to be taken is in fact a public use. *Shoemaker* v. *United States,* 147 U. S. 298; *Moore* v. *Sanford,* 151 Mass. 285, 288; *Welton* v. *Dickson,* 22 L. R. A. 496, 500, 501; *Chicago & Eastern Illinois Railroad Co.* v. *Wiltse,* 116 Ill. 449; Cooley's Constitutional Limitations (7th Ed.) 774; 1 Lewis, Eminent Domain (2d Ed.) 158; 3 Elliott on Railroads, 962. As an incident to this power, in the absence of a statutory remedy, a court of equity has the power to restrain a railroad corporation from taking property for a private use.

In *Neimeyer & Darragh* v. *Little Rock Junction Railway,* 43 Ark. 120, the court said: "Further, with regard to corporations not acting under special charters of legislative grant, but voluntarily organized under general laws, although their existence as corporations cannot be questioned collaterally, yet if they have resulted from fraudulent combinations of individuals to procure powers under circumstances and for purposes not

within the scope and purpose of legislative intent, and the corporators, under shelter of their articles, are about to exercise powers oppressive to the individual, they may be restrained by private suit of those injured or about to be. Fraud has no immunity anywhere in any guise. * * * This is the course that in this case has been pursued. We think that the chancery court properly entertained the bill, and had jurisdiction to enjoin the company, if the merits of the case required that relief."

So, individuals cannot combine as a railroad corporation, and convert property of individuals solely and exclusively to their private use. That would be an abuse of the power to form such corporations under the statutes, and contrary to their spirit and intent, and "may be restrained by private suit by those injured or about to be."

The judgment of the circuit court is reversed, and the cause is remanded, with leave to appellees to amend their answer so as to invoke equitable relief; and with directions to the court, when so amended, to transfer the cause to the proper chancery court.