City of Little Rock, *v.* Samuel Lanier Raines III

5-4177                                          411 S. W. 2d 486

Opinion delivered February 20, 1967

*Joe Kemp* and *Riddick Riffel* and *Moses, McClellan, Arnold, Owen & McDermott,* for appellant.

*Patten & Brown* and *Catlett & Henderson,* for appellee.

JOHN A. FOGLEMAN, Justice. The fundamental question in this case is whether the City of Little Rock has the authority to exercise the power of eminent domain to take private property for use as an industrial park. This involves consideration of two legal questions: (1) Has the power of eminent domain been delegated to the city for this purpose? (2) Is the use for this purpose a public use satisfying constitutional requirements for the exercise of the power?

On June 21, 1965 the City of Little Rock passed an Ordinance (No. 11,612) condemning property of appellees, used for agricultural purposes outside the city limits, for the stated purpose of constructing a port, establishing an industrial park, and for related facilities. This ordinance directed the City Attorney to file condemnation proceedings. Before this was done, appellees filed this action in the Pulaski Chancery Court on October 8, 1965. They alleged that the city was purporting to take their lands for a private purpose—the establishment of an industrial park. They asserted that this action was beyond the city's powers and contrary to the Constitutions of Arkansas and the United States, thus rendering the ordinance void and creating a cloud upon appellees' title. Alternatively, appellees prayed for just compensation. The city filed its answer, but before trial it filed two condemnation suits against different appellees in the Pulaski Circuit Court. Each of the appellees answered and successfully moved the transfer of the cases to the chancery court where, by agreement, all cases were consolidated. After hearing testimony on April 27th and 28th, the chancellor rendered a decree on September 27, 1966, holding the city ordinances null and void, insofar as they applied to the lands of appellees.

In the decree the court made these pertinent findings:

1. That the city ordinances purport to condemn the appellees' property for the purpose of con-

structing a port, establishing an industrial park and related facilities;

2.   that the use for which the city proposed to condemn the property of appellees was to place improvements thereon and otherwise prepare the land for industrial sites, and to sell or lease said lands to private industries;

3.   that these lands were proposed to be used other than as a site for a port facility;

4.   that the proposed use of these lands is not a "public purpose or use permitted by the Constitution of the State of Arkansas under the right of eminent domain of the City of Little Rock, Arkansas."

Appellant contends: That the lands of appellees were being taken for an industrial park that constituted an over-all proposal for port facilities adjacent to the industrial project; that this use was for a public and lawful purpose; that the necessity for the proposed taking was concluded by (1) the vote of the electors of the city approving the issuance of bonds under the authority of Amendment 49 to the Constitution of Arkansas, and (2) the action of the city; and that the city has the authority, both express and implied, to condemn the properties involved.

An understanding of the basis of these findings requires some review of the record. For this purpose we will, for the most part, review the action of appellant and the testimony offered by it.

The title of Ordinance No. 11,612 states that the property is "to be used for the *purpose of constructing a port, establishing an industrial park* and for related facilities." The statement of necessity in this section is that the properties "are necessary for the purpose of creating and developing a port facility and terminal,

and an industrial park and related facilities." [Italics ours]

Appellees filed a motion to require appellant to produce plans for development of the lands of appellees prepared by Garver and Garver, Forrest and Cotton, or by any other person, firm or corporation. In response, appellant stated that it had adopted no plan prepared by those named or any other persons, firm or corporation and added:

> "As indicated in the Complaint the Defendant proposes to *develop the lands of the Plaintiff, when acquired, for general industrial purposes* but has established *no detailed land use plan for such development.*" [Italics ours]

In its condemnation complaint against appellees, Samuel L. Raines, et ux, appellant alleges that it had declared that the acquisition of the lands was "necessary for public use in its undertaking in creating, constructing and developing *an* industrial park, *a* port facility and related facilities." [Italics ours] The complaint of the city in the case against appellee Mary J. Raines states the proposed use to be "in creating, constructing and developing an industrial park and related facilities", without mention of a port.

The preamble to City Ordinance No. 11,674, repealing an ordinance condemning lands of another owner and a section of the ordinance by which appellant sought to condemn appellees' property along with that of other owners, states that the condemnation "was for lands to be used and utilized in the establishment and construction of an industrial park and for related facilities" without mentioning a port facility.

During the examination of one E. L. Killingsworth, Jr., a civil engineer called as a witness by appellant, one of the city's attorneys asked whether the witness prepared "the preliminary plans and the cost figures

for this industrial park to be operated in relation with the Port Authority" and offered the plans prepared by him. This exhibit called the project "Little Rock Port Industrial Park". It consisted of six sheets, and portrayed apparent proposals for water distribution lines, railroad lines, streets, sanitary sewers and storm drainage, along with a proposed typical street section. Nowhere is a port mentioned, except in the title, and its proposed location is not shown. From examination of this plan in conjunction with other exhibits and testimony, it appears that a road or street would be provided to cross a levee into the proposed port site. Mr. Fred I. Brown, Jr., currently Chairman of the Little Rock Port Authority, testified that this agency was "charged with building a port and developing an adjoining industrial district on the Arkansas River". Even though he stated that the two would necessarily be considered a unit, he stated that the purpose was "to build a municipal dock with a *related* industrial area." Little Rock Resolution No. 3,428 was introduced through this witness. Its preamble contains a finding that it is necessary and vital to proceed with acquisition of lands "to be utilized for *industrial development* and *related* port and port terminal facilities *purposes*". The reason Mr. Brown gave for the plan to sell or lease the property acquired to private business was the inability of anyone to make money out of it and the fact that the project is a non-profit venture. He further testified that neither the port nor the industrial district would be a profitable venture and that the city only had the money to develop 129 acres of the projected 1,200 acres. [Italics ours]

Mr. Harry Pittard, the Director of Pulaski County Flood Control and Navigation Committee, a group that served in an advisory capacity in the formulation of this proposed district, when asked his understanding of the use to be made of the district answered, *"Part of it as an industrial site and part of it as a port site."* He said that at the time of his appraisals of appellees' property the existing plans were only to develop it as an industrial site *and* port facility. [Italics ours]

Mr. Floyd Fulkerson, another witness for appellant, stated that the *port* on the Arkansas River would *support an industrial district.*

It might further be noted that no plans exhibited by appellant showed anything more than the location of a proposed port site. They showed nothing purporting to be a plan of development of the port site or an interrelation of the two facilities whatever.

It appears to us that the trial court's factual findings that the proposed taking of appellees' property is for the establishment of an industrial park, by placing improvements thereon and otherwise preparing the lands for industrial sites to be sold or leased to private industries and that the use is for other than a port facility are supported by a preponderance of the evidence. Certainly it cannot be said that they are clearly against the preponderance of the evidence.

The city contends that it has the power of eminent domain for taking the property of appellees for industrial park purposes upon these bases:

(1)   As a power fairly implied in or incident to the express powers granted by Amendment No. 49 to the State Constitution authorizing cities and counties to issue bonds and levy taxes "for the purpose of securing and developing industry within or near the municipality holding the election" and by the provisions of the Act implementing the Amendment [Act 9 of 1960, Extraordinary Session, Ark. Stat. Ann. § 13-1602] (Supp. 1965)].

(2)   As an express grant by Act 231 of 1937, as amended by Act 189 of 1947 [Ark. Stat. Ann. §§ 19-2702—19-2719 (Repl. 1956)], authorizing cities to purchase, construct, establish and operate ports, harbors and barge terminals.

(3)   As an express grant by Act 167 of 1947 [Ark.

Stat. Ann. §§ 19-2720—19-2731 (Repl. 1956)], author-izing cities to create port authorities.

(4) As an express grant by Act 206 of 1963 [Ark. Stat. Ann. §§ 19-3101—19-3108 (Supp. 1965)], an Act implementing Amendment No. 18 to the Constitution which provided for the levy of a city tax to be used for securing the location of factories, industries and river transportation and facilities.

(5) As an express grant by the Act of March 9, 1875 [Ark. Stat. Ann. § 35-902 (Repl. 1962)], as amended.

In considering these contentions of the city, we must keep in mind certain fundamental principals of the law of eminent domain, especially as it relates to municipal corporations.

The power of eminent domain is an attribute of, and inherent in, a sovereign state. Article 2, § 23, Constitution of Arkansas; *Young* v. *City of Gurdon,* 169 Ark. 399, 275 S. W. 890; *City of Little Rock* v. *Sawyer,* 228 Ark. 516, 309 S. W. 2d 30. The right of property is before and higher than constitutional sanction. Article 2, § 22, Constitution of Arkansas.

Cities are creatures of the state to aid it in the regulation and administration of local affairs. *Woods* v. *Haas,* 229 Ark. 1007, 320 S. W. 2d 655; *Portis* v. *Board of Public Utilities of Lepanto,* 213 Ark. 201, 209 S. W. 2d 864; *City of Hot Springs* v. *Gray,* 215 Ark. 243, 219 S. W. 2d 930. They have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensible (not merely convenient) to their objects and purposes. *City of Piggott* v. *Eblen,* 236 Ark. 390, 366 S. W. 2d 192; *McClendon* v. *City of Hope,* 217 Ark. 367, 230 S. W. 2d 57; *Bain* v. *Ft. Smith Light & Traction Co.,*

116 Ark. 125, 172 S. W. 843, LRA 1915 D 1021; *Laprairie v. City of Hot Springs,* 124 Ark. 346, 187 S. W. 442; *City of Argenta* v. *Keath,* 130 Ark. 334, 197 S. W. 686, LRA 1918 B 888; *Cumnock* v. *City of Little Rock,* 154 Ark. 471, 243 S. W. 57, 25 ALR 608; *Arkansas Utilities Co.* v. *City of Paragould,* 200 Ark. 1051, 143 S. W. 2d 11; *Williams* v. *Dent,* 207 Ark. 440, 181 S. W. 2d 29; *Deaderick* v. *Parker,* 211 Ark. 394, 450, 200 S. W. 2d 787.

Cities may act legally only within the powers derived from or delegated by the constitution and statutes. *Neal* v. *City of Morrilton,* 192 Ark. 450, 92 S. W. 2d 208. The validity of their ordinances depends on the authority granted by the constitution or by the legislature. *Incorporated Town of Paris* v. *Hall,* 131 Ark. 104, 198 S. W. 705; *Nesler* v. *City of Paragould,* 187 Ark. 177, 58 S. W. 2d 677; *Bennett* v. *City of Hope,* 204 Ark. 147, 161 S. W. 2d 186; *City of Stuttgart* v. *Strait,* 212 Ark. 126, 205 S. W. 2d 35.

Consequently, if the City of Little Rock has the power of eminent domain for the purposes for which they seek to exercise it here, it must be granted by the constitution or statutes. Grants from sovereigns are to be construed strictly against the grantee. *Citizens Pipe Line Co.* v. *Twin City Pipe Line Co.,* 178 Ark. 309, 10 S. W. 2d 493. The authority for the taking of private property (for public use) should be clearly expressed. *City of City Rock* v. *Sawyer,* 228 Ark. 516, 309 S. W. 2d 30.

Statutes relating to the exercise of the right of eminent domain, especially where there is an alleged delegation of the power, should be strictly construed in favor of the landowner and against the condemnor, largely because they are in derogation of the common right. *City of Little Rock* v. *Sawyer, supra; Hampton* v. *Arkansas State Game and Fish Comm.,* 218 Ark. 757, 238 S. W. 2d 950.

Any fair, reasonable and substantial doubt about

the existence of a power in a municipal corporation must be resolved against it. *City of Piggott* v. *Eblen*, 236 Ark. 390, 366 S. W. 2d 192; *Yancey* v. *City of Searcy*, 213 Ark. 673, 212 S. W. 2d 546.

Having these cardinal principles in mind, we proceed to examine the city's contentions as to sources of its alleged power.

(1) Amendment No. 49 was proposed by the General Assembly. Nothing in that amendment, the resolution proposing it, its content or the ballot title under which the people adopted it, even faintly intimated to the voters that it would permit the taking of private property for securing and developing industry or that any power to do so was, or would be, delegated to cities. Nothing was sought to be done, or was accomplished, by this amendment except to permit the issuance of bonds and the levy of taxes to secure and develop industry. The title of Act 9 Ark. [Stat. Ann. §§ 13-1601—13-1614 (Supp. 1965)] is "Municipalities, Counties Industrial Development Revenue Bond Law." The statement of purposes (§ 13-1614) does not even suggest the conferring or delegating of the power of eminent domain. The only possible inference that there could have been any contemplation of the power of eminent domain is section (§ 13-1602) authorizing municipalities to acquire land, buildings or facilities that can be used in securing and developing industries. If we give the effect to this amendment and its implementing act, contended for by appellant, the city could condemn the plant of an existing industry to secure another. We cannot believe that either the people or the General Assembly intended this. In any event, we do not find the power that appellant seeks to exercise in the present proceeding.

We recognize that the Act calls for a liberal construction to accomplish the purposes thereof. We do not believe that it was intended that this be the vehicle for overruling all principles of existing law of eminent domain, in view of our recognition that the right of pri-

vate property is higher than constitutional sanction. It would take an extremely liberal construction indeed to find the power appellant seeks to exercise here. If the mere fact that cities are authorized to promote industry and to use tax money for that purpose gives it this power, then it seems that it could exercise the power to take a headquarters for a welfare association, since it has been held that contributions to such are a proper public purpose under statutes conferring on municipalities power to make ordinances necessary to promote the prosperity and improve the morals, order, comfort and convenience of the municipality and its inhabitants. See *Bourland* v. *Pollock,* 157 Ark. 538, 249 S. W. 360.

(2) Ark. Stat. Ann. §§ 19-2702—19-2719 (Repl. 1956) does delegate the power of eminent domain to cities, but only for the purpose of acquiring ports, harbors, river-rail and barge terminals. The Act specifically mentions wharves, docks, piers, quays, elevators, compresses, refrigeration storage plants, warehouses and landing places and basins and other structures and any and all facilities needful for the convenient use of the same in aid of commerce, including belt line roads and highways and bridges and causeways, shipyards, shipping facilities and transportation facilities incident thereto and useful or convenient for the use thereof. Industrial sites or parks are not even remotely suggested. The doctrine of *ejusdem generis* would require their exclusion from the contemplation of the Act.

(3) The Act authorizing the creation of a Port Authority probably should not be considered because there is no effort on the part of that authority to take appellees' property. This is attempted by a city ordinance. Even if the Port Authority were acting, however, its powers of eminent domain (§ 19-2723) can be exercised to acquire property only for terminal railroads and structures, including railroad crossings, airports, seaplane bases, naval bases, wharves, piers, ships, docks, quays, elevators, compresses, refrigeration storage plants, warehouses, and other riparian and littoral ter-

1082

minals and structures and approaches thereto, transportation facilities needful for the convenient use of the same, belt line roads and highways and causeways and bridges. None of these purposes for appellees' property are even remotely suggested in the city ordinances, pleadings, or testimony.

(4) Ark. Stat. Ann. §§ 19-3101—19-3108 (Repl. 1956) is an Act implementing Amendment No. 18 and providing for creation of industrial commissions authorized by this amendment. This Act only authorizes the use of the proceeds of a special tax or bond issue authorized thereby. The amendment does not purport to delegate the power of eminent domain. These proceedings are not under the provisions of either the constitutional amendment or its implementing act; so we need not decide whether the section of the Act authorizing the use of these funds for the acquisition of industrial sites can be considered a delegation of the power of eminent domain.

(5) Appellant seeks to find the power in the rather general words, "other lawful purposes", found in § 35-902 Ark. Stat. Ann. (Repl. 1962). This court has already held that no such broad and liberal construction can be given this section. *City of Osceola* v. *Whistle*, 241 Ark. 604, 410 S. W. 2d 393. While the appellant urges that the Act should not be given such an extremely narrow construction, this clause cannot, in any event, be extended beyond the municipal purposes provided for in the Act of March 9, 1875 (as amended), of which the clause is a part.

Thus, we find no delegation to the city of the power of eminent domain by the state under which this taking can be sustained, if indeed the state has any such power in view of the use to which the property would be put. A state cannot grant greater powers to a municipal corporation than it possesses. *McClendon* v. *City of Hope*, 217 Ark. 367, 230 S. W. 2d 57. Without the consent of the owner, private property cannot be taken for private

use, even under the authority of the legislature. *Roberts v. Williams,* 15 Ark. 43; *Mountain Park Terminal Railway Co. v. Field,* 76 Ark. 239, 88 S. W. 897; *Gilbert v. Shaver,* 91 Ark. 231, 120 S. W. 833; *Ozark Coal Co. v. Pennsylvania Anthracite R. Co.,* 97 Ark. 495, 134 S. W. 634.

Whether or not a proposed use for which private property is to be taken, even with legislative sanction, is a public or private us̖ ᵗ˄ a judicial question which the owner has a right to have determined by the courts. *Mountain Park Terminal Ry. Co. v. Field, supra; Ozark Coal Co. v. Pennsylvania Anthracite R. Co., supra; Cloth v. Chicago R. I. & P. Ry. Co.,* 97 Ark. 86, 132 S. W. 1005; *Hogue v. Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49.

Private property can be taken under the power of eminent domain only for a public use. For a use to be public it is necessary that the public shall be concerned in the use to be made thereof and the purpose for which the property is to be used must in fact be a public one. *Cloth v. Chicago R. I. & P. Ry. Co., supra; St. Louis I.M. & S. Ry. Co. v. Petty,* 57 Ark. 359, 21 S. W. 884, 20 L.R.A. 434.

As this court said in the *Petty* case, where the delegated power of eminent domain was being exercised by a railroad:

"* * * A railway cannot exercise the right of eminent domain to establish a private shipping station for an individual shipper. If the station is for the exclusive use of a single individual, or a collection of individuals less than the public, that stamps it as a private use, and private property cannot be taken for private use. The fact that the railway's business would be increased by the additional private facilities is not enough to make the use public."

The findings of fact by the trial court that appellees' lands were to be used to place improvements there-

on and otherwise prepare the lands for industrial sites for sale. or lease to private industries and that the use was not as a site for a port facility, not being clearly against the preponderance of the evidence, would lead to the legal conclusion that the use is not a public one for which the power of eminent domain may be exercised.

But appellant seeks to obtain a different result by saying the determination of the necessity for the use closes the inquiry by the courts, relying on *Woollard* v. *State Highway Commission,* 220 Ark. 731, 249 S. W. 2d 564 and *State Highway Commission* v. *Saline County,* 205 Ark. 860, 171 S. W. 2d 60. This contention is not well founded because the question in those cases related to the necessity of the taking for an admitted public use—highway construction. In the *Woollard* case the question was whether right-of-way could be taken where it was needed for future, not present, use. The question in the *Saline County* case had to do with location and route of a highway. Neither question is involved here.

The city also seeks to justify taking of industrial sites as a public use under the authority of such cases as *Hackler* v. *Baker, County Judge,* 233 Ark. 690, 346 S. W. 2d 677; *Wayland* v. *Snapp,* 232 Ark. 57, 334 S. W. 2d 633. These cases refer to industrial development as a public purpose insofar as expenditure of tax funds is concerned. The constitutional questions considered were whether the legislation violated those sections of our constitution: (1) Prohibiting a city or county from becoming a stockholder in or appropriating money to, or lending its credit to a company; (2) prohibiting expenditures in excess of revenues; (3) prohibiting exemption of any property from taxation, except that used exclusively for public purposes; (4) prescribing the jurisdiction of county courts, and (5) permitting a county to issue bonds for industrial development purposes. Nowhere in either of these cases is there any discussion that leads to the conclusion that use of private property

taken under eminent domain for sale to private industries is a "public use" under our constitution and statutes. This would also lead to the conclusion which would permit the taking of the buildings for a welfare association, under the authority of *Bourland* v. *Pollock,* 157 Ark. 538, 249 S. W. 360, as hereinabove pointed out. That a project is one for which public funds may be expended is not a sufficient basis for finding that use of the property is a public use justifying the taking of private property.

Appellant also relies on the decision in *Sublett* v. *City of Tulsa,* 405 P. 2d 185 (Okla. 1966). It is significant that the Oklahoma Constitution prevents the denial of the right of the State to engage in *any occupation or business for public* purposes. We prefer the result reached in *Hogue* v. *Port of Seattle,* 54 Wash. 2d 799, 341 P. 2d 171. There it was held that the Port of Seattle could not constitutionally acquire well-developed agricultural and residential lands for industrial development purposes by eminent domain as the use was private, not public. It was further held that before the power of eminent domain could properly be exercised, the courts must find that the proposed use of the property is a really public one. The condemning authority in that case had contended that the taking of this land was incidental to the reclamation of certain marginal lands in the proposed industrial district, just as appellant contends that this industrial park is incidental to the establishment of a Port.

The city also contends that the housing authority cases constitute precedent and authority for its contention that the proposed use of this property is a public use. Appellant cites *Hogue* v. *Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49, and *Rowe* v. *Housing Authority of City of Little Rock,* 220 Ark. 698, 249 S. W. 2d 551, on the basis of the holding that the mere fact the property taken might later be sold to another private individual or corporation would not render the use private or the Act conferring the

power of eminent domain unconstitutional. Apparently appellant feels that this makes the purpose of the attempted taking here a valid public use. What it overlooks is that in these cases the purpose of the taking expressed in the Acts authorizing the creation of these authorities was slum clearance, elimination of unsafe, unsanitary housing, and providing safe and sanitary dwelling accommodations—which the courts found to constitute a public use. The right of sale of portions of the property after the public purpose was accomplished was held not to make the use any the less public nor the Acts unconstitutional. Here, the sole and only purpose is to acquire the property of appellees now being used for agricultural purposes and to sell or lease it to private industries. Those Acts granted the power of eminent domain in specific words and stated that the objectives were not only public purposes, but public uses.

If the people of Arkansas desire to confer the power on municipalities to acquire private property by eminent domain for industrial development, they should do so in clear and unmistakable language in view of the provisions of our constitution.

Our holding is not intended, nor should it in anywise be taken, to be critical of the commendable efforts of the public-spirited citizens constituting the Little Rock Port Authority or its Board of Directors or other officials or agencies who have collaborated in these projects. On the other hand, they are to be commended, not only for the expenditure of their energies, but for their frankness and candor in their statements and actions in treating the subject of this litigation. Yet, when commendable desire for progressive development and fundamental constitutional principles conflict, there is no doubt that the latter must prevail. Otherwise, constitutional government—government by law, on which our system will stand or fall—could not exist.

The decree is affirmed.