The Honorable Jim Argue, Jr. State Representative 5905 Forest Place, #210 Little Rock, Arkansas 72207-5245
Dear Representative Argue:
This letter is a response to your request for an opinion regarding various issues arising out of Act 664 of 1995. Act 664 of 1995 states in pertinent part:
 SECTION 1. When any municipal official or municipal employee age fifty-five (55) or over who is vested in the retirement system retires, the official or employee may continue to participate in the municipality's health care plan as long as the official or employee pays both employer and employee contributions to the health care plan.
Acts 1995, No. 664, § 1.
You have presented the following questions:
(1)(a) How will the municipality be required to implement Act 664?
 (1)(b) Will the current health care plan contract continue to be in effect for the group of qualified retirees?
 (2)(a) Can a different rate be established for the group of qualified retirees utilizing insurance industry actuarial tables and professional underwriting standards?
 (2)(b) Must the municipal employer's active group subsidize the retiree group's coverage by including them in the active group for premium rating purposes?
 (3) How does Act 664 coincide with other statutory and regulatory requirements, such as COBRA and Medicare?
 (4) Can the municipality establish a minimum service requirement, regardless of whether the retired official or employee is vested in the retirement system, in order for the retiree to be eligible for the continued coverage?
 (5) Is the language of Act 664 so vague as to render the act unconstitutional?
RESPONSE
Question 1(a) — How will the municipality be required to implement Act664?
It is my opinion that the manner in which Act 664 is to be implemented is left largely to the discretion of the municipalities. It is well-established in Arkansas law that municipalities may exercise powers that are necessarily implied for purposes of, or are incident to the authority that has been expressly granted to them by the legislature. They may also exercise the powers that are indispensable to (as opposed to merely "convenient to") their objects and purposes. See, e.g., City ofLittle Rock v. Raines, 241 Ark. 1071, 411 S.W.2d 486 (1967). Because Act 664 gives municipalities the authority to offer health care coverage to retirees, but does not expressly set forth the specifics of how such coverage is to be implemented, I conclude that the formulation of such specifics, being incident and indispensable to the carrying out of Act 664, is a power that the municipalities may impliedly exercise.
In implementing Act 664, however, the municipalities must remain within certain limitations imposed by the Arkansas Constitution, the United States Constitution, and applicable state and federal statutory law. Each such limitation will be addressed in responding to the following questions.
Question 1(b) — Will the current health care plan contract continue to bein effect for the group of qualified retirees?
It is unclear from your question whether, in using the phrase "group of qualified retirees," you are referring to persons who have already retired, or to persons who are now eligible to retire. It is my opinion that persons who retired prior to the effective date of Act 664 are not entitled to have the act operate retroactively so as to allow them to participate in the municipality's health care plan.[1] The retroactive operation of a substantive law such as Act 664 is prohibited under Arkansas law. Ark. Dept. of Human Services v. Walters, 315 Ark. 204,866 S.W.2d 823 (1993). Act 664 is substantive because it creates new rights and obligations. Id.
However, those persons who retire after the effective date of the act will be entitled to participate in a plan through the municipality. Nevertheless, it is my opinion that the specific terms of the municipality's "current" plan (i.e., the plan that was in effect at the time of the enactment of Act 664) need not necessarily apply to those persons. Indeed, the application of those terms to the retirees may be inappropriate.[2] Generally speaking, any plan that is offered must be actuarially sound. The "current plan" about which you have inquired (if it was in effect prior to the enactment of Act 664) presumably was crafted and negotiated without taking into account the participation of retirees. This office has previously recognized that the introduction of new factors (such as a new or different profile of participants) into a benefits plan can render the plan actuarially unsound. See Attorney General Opinion No. 92-086, citing Fair Lawn Education Association v.Fair Lawn Board of Education, 79 N.J. 574, 401 A.2d 681 (1979).
Therefore, I conclude that the terms of any plan in effect prior to the enactment of Act 664 need not apply to retirees. However, some actuarially sound plan must be made available to them, if they retire after the effective date of Act 664. I also note that all applicable rules and regulations promulgated by the Arkansas Insurance Commission must be complied with. It would be advisable to consult with the Department of Insurance for an accurate reference to any such rules and regulations.
Question 2(a) — Can a different rate be established for the group ofqualified retirees utilizing insurance industry actuarial tables andprofessional underwriting standards?
It is my opinion that a different rate can be established for the group of qualified retirees utilizing insurance industry actuarial tables and professional underwriting standards. It has long been established that insurance policies can differentiate in premiums on the basis of differences in risk. See, e.g., Watkins v. Louisiana State Life Ins. Co.,151 Ark. 596, 237 S.W. 89 (1922).
Whether any specific statutory authority exists allowing this type of differentiation in any given plan depends upon the type of plan in question. There are no statutes governing the rates and premiums charged for plans not regulated by the Arkansas Insurance Commission. However, the statutes governing the rates of some of the regulated plans do authorize the type of difference that you have described.[3]
I therefore conclude that if regulated plans may make reason-based differences in rates, unregulated plans may do so as well. It is assumed that both the competitive market and the negotiating power of the various classes of insureds will serve to regulate such differences.
For these reasons, I conclude that the municipality may establish a different rate for retirees.
Question 2(b) — Must the municipal employer's active group subsidize theretiree group's coverage by including them in the active group forpremium rating purposes?
It is my opinion that because Arkansas law allows for differing rates based upon differing risks, as discussed in response to Question 2(a), the municipal employer's active group need not subsidize the retiree group's coverage. This, of course, is a matter that, in an unregulated group plan, can be the subject of negotiation among the various interested parties, the outcome of which is not dictated by Arkansas law.
Question 3 — How does Act 664 coincide with other statutory andregulatory requirements, such as COBRA and Medicare?
This office has neither the resources nor the authority to opine in any detail with regard to federal law. I therefore cannot engage in a comparison or analysis of Act 664 in the context of COBRA and/or Medicare. However, I will note that I have previously opined that the provisions of COBRA (26 U.S.C. § 4980B) do not apply to "government plans."[4] See Attorney General Opinion No. 91-236. I also pointed out in Op. No. 91-236 that another federal law, 42 U.S.C. § 300bb, which contains provisions similar to those set forth in COBRA, does apply to governmental plans.
To the extent that any federal law may be applicable to the plans affected by Act 664, I find it pertinent to reiterate the general principle that under the supremacy clause of the United States Constitution, federal law is the "supreme law of the land," U.S. Const., art. 6, cl. 2, and while there is no per se prohibition against an overlap of federal and state law, federal law must prevail in the event that a conflict between the two arises. Hamm v. City of Rock Hill,379 U.S. 306 (1964), reh. denied, Lupper v. Arkansas, 379 U.S. 995. For further information about COBRA and Medicare, I suggest that you consult the U.S. Attorney.
Question 4 — Can the municipality establish a minimum servicerequirement, regardless of whether the retired official or employee isvested in the retirement system, in order for the retiree to be eligiblefor the continued coverage?
It is my opinion that the municipality may not establish a minimum service requirement beyond its vesting requirement that must be met in order for retirees to be eligible for the continued coverage provided under Act 664.
I have reached this conclusion on the basis of three legal principles. The first such principle is contained in the Arkansas Constitution. Article 12, § 4 of that document states:
 No municipal corporation shall be authorized to pass any law contrary to the general laws of the state. . . .
Ark. Const., art. 12, § 4.[5]
Any municipal ordinance that would make it more difficult to receive a benefit created by state law is, in my opinion, contrary to state law.
The second principle upon which I have based my conclusion is precedential authority of the Arkansas Supreme Court. In both City of Ft.Smith v. Ft. Smith Housing Auth., 256 Ark. 254, 506 S.W.2d 534 (1974) andNahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974), the Arkansas Supreme Court has addressed and rejected attempts by municipalities to enact ordinances that tampered with state laws. In City of Ft. Smith, for example, the city passed an ordinance changing the procedure provided by state law for filling vacancies on municipalities' Housing Authority commissions. In response to a challenge to the ordinance, the city argued that the filling of vacancies on its Housing Authority Commission was a municipal matter that the city was statutorily empowered to address. The court rejected the argument, finding that the matter was of state-wide interest, and struck the ordinance down on the grounds that it was contrary to state law. It is my opinion that health care coverage for municipal employees, like Housing Authority issues, is a matter of state-wide concern, and any attempt by a municipality to change the requirements set forth in Act 644 would fall into the same category as the ordinance that the court struck in City of Ft. Smith.
Finally, I have based my conclusion upon the Arkansas Supreme Court's rule of statutory interpretation which requires that the statutory language under consideration be given its plain and commonly-understood meaning. American Cas. Co. of Reading, Pennsylvania v. Mason,312 Ark. 166, 848 S.W.2d 392 (1993). The plain language of Act 664 states only three limitations on a municipal employee's ability to participate in the municipality's health care plan after retirement: (1) The employee must have reached age 55; (2) The employee must have vested in the municipality's retirement system; and (3) The employee must make all employer and employee contributions to the plan.
As discussed previously, municipalities, being creatures of the state legislature, may exercise only the powers that have been expressly bestowed upon them by the legislature, and powers that are necessarily implied for purposes of, or are incident to their expressly granted powers. They may also exercise those powers that are indispensable to, not merely convenient to, their objects and purposes. Jones v. American HomeLife Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987); City of Little Rockv. Raines, 241 Ark. 1071, 411 S.W.2d 486 (1967). The imposition of an additional requirement for retirees to receive health care coverage is not an act that could be characterized as "necessarily implied for purposes of, or incident to" the municipalities' expressly granted power to extend health care coverage to retirees. Indeed, such an act by a municipality would more appropriately be characterized as "convenient to" — not "indispensable to" — the municipality's object and purpose.
For these reasons, I conclude that municipalities cannot impose further conditions in order for Act 664 to be applicable.
Question 5 — Is the language of Act 664 so vague as to render the actunconstitutional?
It is my opinion that the language of Act 664 is not unconstitutionally vague.
The test of vagueness in any given statutory enactment is whether persons of common intelligence can guess at the statute's meaning. Rockefellerv. U.S., 572 F. Supp. 9 (E.D. Ark. 1982), aff'd 718 F.2d 290, cert.denied 466 U.S. 962. The Rockefeller court further explained this test, stating: "Laws that have failed to meet this standard are, almost without exception, those which turn on language calling for the exercise of subjective judgment, unaided by objective norms." Rockefeller,572 F. Supp. at 15, citing the following as examples of cases in which statutory language was found to be unconstitutionally vague: JosephBurstyn, Inc. v. Wilson, 343 U.S. 495 (1952) (statutory language: "sacrilegious"); Winters v. New York, 333 U.S. 507 (1948) (statutory language: "so massed as to become vehicles for inciting"); United Statesv. L. Cohen Grocery Co., 255 U.S. 81 (1921) (statutory language: "unreasonable charges").
The meaning of Act 664 is clear: To provide for the availability of health care coverage for retired municipal employees. It is my opinion that any person of common intelligence could glean that meaning from a reading of Act 664. The absence of specific details of the implementation of the Act does not render it unconstitutionally vague. The Arkansas Supreme Court has held that mathematical certainty and impossible standards of specificity in statutory language are not required by the constitution, and that even criminal statutes (which are held to a stricter standard of specificity, see Harper v. Crockett,868 F. Supp. 1557 (E.D. Ark. 1994)) meet constitutional requirements if their language is sufficiently clear when measured by the standard of common understanding. Davis v. Smith, 266 Ark. 112, 583 S.W.2d 37
(1979).
For these reasons, I conclude that the language of Act 644 is not unconstitutionally vague.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] These persons may, however, be entitled to participate in the municipality's plan under the provisions of some other law. See, e.g.,
42 U.S.C. 300bb; A.C.A. § 23-86-114.
[2] It should be noted that the terms of the health care plan contract that was in effect at the time of the enactment of Act 664 must continue to be in effect for the balance of the contract period for all unretired persons who are currently contractually entitled to coverage under that contract. As to those persons, Act 664 cannot, under the constitutional principle prohibiting the impairment of contracts, operate retroactively to disturb any previously existing contract rights. See U.S. Const., art. 1, § 10; Ark. Const., art. 2, § 17. The Arkansas Supreme Court reiterated this principle in Jones v. Cheney, 253 Ark. 926,489 S.W.2d 785 (1973), and in Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796
(1973). This is not to say that the parties cannot agree to renegotiate the terms of that contract.
[3] For example, A.C.A. § 23-67-208(d)(1), which governs only certain types of insurance, states: "A rate is not unfairly discriminatory in relation to another in the same class of business if it reflects equitably the differences in expected losses and expenses. Rates are not unfairly discriminatory because different premiums result for policyholders with like loss exposures but different expense factors, or with like expense factors but different loss exposures, if the rates reflect the differences with reasonable accuracy." A.C.A. §23-67-208(d)(1).
[4] As I noted in Op. No. 91-236, a question could arise as to whether a privately administered plan that is purchased by a governmental entity constitutes a "governmental plan" within the meaning of a COBRA exemption. I opined in No. 91-236, citing Silvera v. Mutual Life Ins.Co. of New York, 884 F.2d 423 (9th Cir. 1989), that it is likely that such plans would constitute "governmental plans."
[5] See also A.C.A. § 14-43-601(a)(2), which states: "The municipality may exercise any function or legislative power upon the foregoing state affairs if not in conflict with state law." This section applies only to cities of the first class.